CC-1997-390                                          1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Ramón Daniel Martínez Soria<br>      Recurrido<br><br>      v.<br><br>Ex-Parte<br>Procuradora Especial de Relaciones de<br>Familia | Certiorari<br><br>2000 TSPR 75 |

Número del Caso: CC-1997-0390

Fecha: 18/05/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Miguel A. Giménez Muñoz

Abogada de Gladys de los A. Martínez Montañez:

                Lcda. Maritza Hernández

Abogado de la Procuradora de Relaciones de Familia:

                Oficina del Procurador General
                Lcdo. Myriam Virola Santiago
                Procuradora General Auxiliar

Abogado de Ramón Daniel Martínez Soria:

                Lcdo. Juan Ramón Miranda Díaz

Materia: Adopción

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ramón Daniel Martínez Soria

    Recurrido

       v.

                          CC-1997-390    Certiorari

Ex-parte

Procuradora Especial de
Relaciones de Familia


SENTENCIA


San Juan, Puerto Rico, a 18 de mayo de 2000

I

    Gladys de los A. Martínez Montañez nació el 20 de noviembre de 1972. Era la segunda hija procreada en el matrimonio de Eugenio Figarella Picó y Gladys Montañez Miranda. Luego, el vínculo matrimonial quedó disuelto y Gladys de los A. permaneció bajo la custodia y patria potestad de su madre. El 11 de julio de 1977 su madre contrajo nupcias con Ramón Martínez Soria, integrando el núcleo familiar las dos hijas de Gladys Montañez y otra hija habida posteriormente en dicho matrimonio.

    El 30 de noviembre de 1989, cuando Gladys de los A. tenía diecisiete (17) años, Martínez Soria

solicitó ante el entonces Tribunal Superior, Sala de San Juan, su adopción y de su hermana mayor. Acompañó a su petición dos declaraciones (2) juradas, una propia y la otra del padre biológico de las hermanas, expresando su consentimiento a la adopción. Luego de celebrar los trámites legales correspondientes, el Tribunal de Primera Instancia, convencido de lo beneficioso de la adopción, el 22 de enero de 1992, accedió y decretó con lugar la adopción a todos los efectos legales.

Gladys de los A. alcanzó la mayoría de edad el 20 de abril de 1994, dos (2) años y tres (3) meses después de decretadas las adopciones. A los cinco (5) meses y una (1) semana de haber cumplido los veintiún (21) años de edad, Gladys de los A. impugnó su adopción mediante moción al efecto ante el Tribunal de Primera Instancia. Alegó que su padre adoptante la cuidó y crió desde temprana edad, por lo que estuvo bajo su control y el de su madre hasta que advino a la mayoridad, cuando se mudó del seno familiar. Tomó esa decisión porque alegadamente desde que tenía trece (13) años su padre adoptivo Martínez Soria abusaba sexualmente de ella, por lo que no le interesaba llevar su apellido. El 16 de mayo de 1994, Instancia emitió una orden requiriendo a Gladys de los A. que notificara su impugnación a la Procuradora Especial de Relaciones de Familia, a la parte adoptante y a su representante legal.[1] Gladys de los A. solicitó reconsideración de esa orden, alegando que no tenía que notificar al padre adoptante y, que en todo caso, a quien tenía que informar era a la Procuradora, acción que ya había tomado. Surge que el abogado de Martínez Soria renunció a su representación legal, ya que las gestiones para localizar a la madre de la menor fueron infructuosas.[2]

El 28 de junio, Instancia le ordenó a la Procuradora que se expresara, y simultáneamente, vía reconsideración eximió a Gladys de los A. de notificar su impugnación. La Procuradora compareció el 3 de agosto

---

[1] Además, ordenó notificar a la Fiscalía de Distrito para encausar la acción criminal correspondiente.

[2] Dicha renuncia fue aceptada por el Tribunal de Primera Instancia.

oponiéndose a la impugnación de adopción, por entender que había transcurrido en exceso el término de dos (2) años para llevar esa acción; que dicho término era de caducidad y procedía la desestimación. Además alegó, que no procedía en derecho la reconsideración concedida por el tribunal, toda vez que se le estaba privando de su derecho al padre adoptante, sin que se le notificara ni proveyera la oportunidad de ser oído.

El 8 de agosto, Instancia dejó sin efecto su orden previa que declaró con lugar la reconsideración y ordenó nuevamente se notificara al padre adoptante, por ser parte indispensable. Gladys de los A. volvió a oponerse, señalando que ello convertiría el proceso en contencioso. Expuso que el término de dos (2) años no era de caducidad cuando se invoca contra menores de edad. Finalmente, el 12 de septiembre Instancia denegó la solicitud para que se dejara sin efecto la resolución de adopción dictada el 22 de enero de 1992, concluyendo que conforme al Artículo 613-E del Código de Enjuiciamiento Civil,[3] transcurrido el período de dos (2) años, la adopción no puede ser atacada directa ni colateralmente en ningún procedimiento. Se solicitó reconsideración, la cual fue acogida y concediéndosele a la Procuradora término para que se expresara. Esta funcionaria reafirmó su posición de que el padre adoptante tenía que ser notificado de las alegaciones en su contra.

Inconforme con el dictamen del Tribunal de Instancia, Gladys de los A. presentó recurso de revisión ante este Tribunal el 13 de octubre de 1994. Expedimos el recurso y mediante Sentencia en el caso de <u>Ramón Daniel Martínez Soria, Ex Parte</u>, res. en 1 de noviembre de 1995, 139 D.P.R. ____ (1995), resolvimos que la resolución recurrida había sido dictada sin jurisdicción, pues faltaban partes cuya presencia resultaba indispensable para la correcta disposición del caso.

Devuelto el caso a Instancia, se notificó a las partes indispensables previamente omitidas y excluidas. El padre adoptante

---

[3] 32 L.P.R.A. sec. 2697, Ley de Procedimientos Legales Especiales.

Martínez Soria compareció, y aunque negó las alegaciones de Gladys de los A., se allanó a su solicitud. El 19 de enero de 1996 se le anotó la rebeldía al padre biológico, quien nunca compareció, a pesar de ser notificado. La Procuradora volvió a comparecer reiterándose en su posición de que la acción había caducado. Indicó que, como política pública, la adopción debe ser inatacable, aun en los casos en que el menor adoptado haya llegado a la mayoría de edad.

El Tribunal de Instancia, mediante resolución del 26 de julio de 1996, dictaminó que la no caducidad de la acción fue un asunto resuelto implícitamente por este Tribunal, ante lo cual señaló vista evidenciaria para atender el reclamo de Gladys de los A. La Procuradora solicitó reconsideración, alegando que esa afirmación no era cierta, ya que este Tribunal no se pronunció en lo referente a la caducidad ni sobre la acción impugnatoria. Se celebró la vista el 7 de agosto de 1996, y luego de las partes presentar sus respectivos memorandos, mediante resolución del 29 de octubre, Instancia resolvió que el término de caducidad de dos (2) años establecido por el Artículo 613-E, supra, para el caso de menores de edad, debe comenzar a decursar a partir de que éstos advengan a la mayoría de edad. La Procuradora acudió al Tribunal de Circuito de Apelaciones, cuestionando esa determinación. El Tribunal Apelativo expidió el auto y concedió término a las partes recurridas para presentar sus alegatos en oposición. Subsiguientemente, el 17 de junio de 1997, dicho foro apelativo (Hons. Alfonso de Cumpiano, Miranda de Hostos y Giménez Muñoz, Ponente) dictó Sentencia y revocó. Dictaminó la improcedencia de la acción de impugnación, toda vez que había transcurrido el plazo señalado para instarla, por lo que procedía su desestimación por caducidad. Archivó en autos copia de su notificación el 19 de junio.

Insatisfecha, a solicitud de Gladys de los A. acordamos revisar.[4]

---

[4] Discute los siguientes señalamientos:

"Erró el Tribunal de Circuito de Apelaciones al desestimar la causa de acción de la parte aquí compareciente

II

En recta metodología adjudicativa discutiremos inicialmente el último error señalado. Se argumenta que el Tribunal de Circuito incidió al determinar que hubo una vista evidenciaria en este caso el 7 de agosto de 1996, ya que ese día la Procuradora de Familia le pidió a la juez su suspensión y las partes estuvimos contestes en no celebrarla sin que se resolviera el planteamiento de derecho sobre la caducidad.

En virtud de la decisión y curso de acción que hoy adoptamos, el señalamiento es inconsecuente. No detectamos perjuicio alguno contra la peticionaria Gladys de los A., que el Circuito de Apelaciones hubiese expresado que se celebró dicha vista evidenciaria.

El segundo señalamiento se refiere a que el Circuito de Apelaciones erró al emitir su Sentencia y, posteriormente negarse a posponer sus efectos en vista de que la representante legal de Gladys de los A. estaba de vacaciones fuera de Puerto Rico y lo había notificado diligentemente mediante moción, con un mes de antelación a la determinación judicial.

En efecto, los autos revelan que su representante legal presentó con tiempo una "Moción Informativa" exponiendo el período de sus

---

basado en que el término de caducidad del Art. 613-E (SUPRA) le es de aplicación a la peticionaria y por ende, a los menores de edad adoptados y al determinar que ese término de 2 años va dirigido por mandato legislativo, [en lenguaje claro y sin lagunas], a todas las personas con interés en la impugnación de una adopción.

"Erró el Tribunal de Circuito de Apelaciones en emitir una sentencia y posteriormente negarse a posponer los efectos de la misma cuando la representante legal de la parte perjudicada por esa sentencia estaba de vacaciones fuera de Puerto Rico y así lo había notificado responsablemente mediante moción con un mes de antelación a la determinación judicial.

"Erró el Tribunal de Circuito de Apelaciones al determinar que hubo una vista evidenciaria en este caso el día 7 de agosto de 1996 ya que ese día la Honorable Procuradora de Familia le pidió a la juez la suspensión de la misma y las partes estuvimos contestes en no celebrar la vista sin que se resolviera el planteamiento de derecho sobre la caducidad o no de la acción."

vacaciones, razón por la cual solicitó **se paralizaran los procedimientos desde el 10 de junio al 10 de julio de 1997**. Adujo que no podrá encargarse del caso.

En correcta juridicidad el Tribunal de Circuito hizo caso omiso y, en el ejercicio discrecional de su prerogativa judicial, entendió que no debía paralizar los procedimientos. En nuestra jurisdicción no existe un derecho absoluto del abogado a suspender trámites judiciales –ante Instancia o foros apelativos–,        por vacaciones. Un sistema de administrar justicia eficientemente no puede configurar semejante derecho. En circunstancias como las de autos, corresponde a los abogados adoptar las medidas conducentes –directa o a través de otro togado–, que le permitan descargar adecuadamente su responsabilidad, máxime cuando están en juego términos jurisdiccionales.

Resolvemos, pues, que no erró el Circuito al negarse a dejar sin efecto la notificación de su Sentencia, para reactivar el término jurisdiccional de una posible reconsideración. La diligencia de la representante legal de la peticionaria de anticipadamente expresar mediante moción que se iba a ausentar del país por determinado período, aunque encomiable, no fue suficiente.

En torno al primer señalamiento, por distintos fundamentos, resolvemos que en las circunstancias  peculiares del caso, erró el Tribunal de Circuito al desestimar la causa de acción de Gladys de los A.        Se revoca dicho dictamen y ordena al Tribunal de Primera Instancia dilucidar en vista evidenciaria las alegaciones de Gladys de los A., y oportunamente decretar el remedio correspondiente.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García, la Jueza Asociada señora Naveira de Rodón y el Juez Asociado señor Fuster Berlingeri emitieron opiniones concurrentes separadas; los Jueces Asociados señores Rebollo López y Hernández Denton concurren con el resultado; el Juez Asociado señor Corrada del Río emitió opinión disidente. El Juez Presidente señor Andréu García no intervino.

Isabel Llompart Zeno
   Secretaria del Tribunal Supremo

Isabel Llompart Zeno
   Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Daniel Martínez Soria

     Recurrido

       v.

                      CC-1997-390     Certiorari

Ex-parte

Procuradora Especial de
Relaciones de Familia

Opinión Concurrente del Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 18 de mayo de 2000

**El Art. II, Sec. I de nuestra Constitución prohibe todo trato discriminatorio por razón de nacimiento y proclama la igualdad filial ante la ley.** No podemos, pues, confirmar la respetable opinión del Tribunal de Circuito de Apelaciones que eleva a dogma un precepto procesal y desvirtúa así la sustancialidad del fundamento jurídico y humano en que se basa toda paternidad, sea biológica o por adopción.

En su correcta perspectiva este recurso trata sobre el derecho que tiene todo hijo a esclarecer su origen, a saber, los factores, circunstancias y motivos que dieron lugar a su filiación.

Nuestra Constitución no permite negarle a un hijo adoptivo el derecho que tiene un hijo biológico de dilucidar ante un tribunal de justicia las causas y el origen de su filiación. Nos explicamos.

I

Sabemos que la filiación surge por naturaleza, –matrimonial o extramarital–, o por adopción y sintetiza el conjunto de relaciones jurídicas que, determinadas por la paternidad y la maternidad, vinculan a los padres con los hijos dentro de la familia. Este derecho abarca la institución de la patria potestad y los deberes y derechos asistenciales en general. Ruth E. Ortega Vélez, 25 Lecciones Derecho de Familia, Ed. Scisco, San Juan, págs. 227–228 (1997).

La filiación matrimonial crea un estado de presunción filial legítima. **Art. 113, Código Civil**,[5]. Así un hijo nacido vigente un matrimonio o durante el período señalado en el estatuto se presume concebido en y del matrimonio, esto es, se activa una presunción de paternidad del marido. Moreno Álamo v. Moreno Jiménez, 112 D.P.R. 376 (1982). Ésta presunción es relativa y puede ser destruida mediante prueba en contrario. Por ello hemos resuelto que un hijo[6] puede impugnar su presunta paternidad a los fines de reclamar su verdadera filiación.[7]

La razón para permitir el que se impugne la presunción de paternidad es establecer la realidad de los hechos que rodean la filiación, y no perpetuar una relación espuria, falsa o ficticia a base

---

[5] Dispone: "Son hijos legítimos los nacidos después de ciento ochenta días siguientes al de la celebración del matrimonio y antes de los trescientos días siguientes a esa disolución." 31 L.P.R.A. sec. 461.

[6] En adición al padre o sus herederos (Art. 116 Código Civil), tienen capacidad jurídica para impugnar la presunción de paternidad establecida por el Art. 113, el hijo (Agosto v. Javierre, 77 D.P.R. 471 (1954)), la madre (Robles López v. Guevárez Santos, 109 D.P.R. 563 (1980)) y el padre biológico (Ramos v. Marrero, 116 D.P.R. 357 (1985)).

[7] Todos los hijos podrán radicar la acción en vida de su padre y hasta un año después de la muerte de éste. Si el padre muere cuando el hijo es menor de edad, el menor tendrá hasta cuatro (4) años después de llegar a la mayoridad para radicar el pleito. Además, si luego de la muerte de su padre apareciera un documento en el que se reconozca la paternidad expresamente, el hijo tendrá seis (6) meses para presentar la acción, contados desde la fecha en que se descubrió dicho documento. Art. 126 Código Civil.

de mantener la integridad artificial de la institución paternal. Agosto v. Javierre, 77 D.P.R. 491 (1954).

Ante nos, Gladys de los Ángeles Martínez ataca y cuestiona precisamente el origen de su filiación por adopción. Desea esclarecer la situación que enmarcó su adopción y desenmascarar un alegado procedimiento fraudulento.

Aunque por razones obvias la impugnación de la presunción paternidad y este recurso son diferentes, su procedencia se apoya en idéntico fundamento: **ennoblecer la verdad**.

En un procedimiento de impugnación, la presunción de ley es cuestionada con el objetivo de aclarar y fijar la verdadera filiación, es decir, la determinación de quién es en realidad el padre biológico del hijo que impugna.

Si realizamos un paralelismo, vemos que el propósito para la acción de Gladys de los Ángeles es examinar si el procedimiento de filiación adoptiva fue cónsono con las normas que lo regulan, si el origen de la filiación fue verdadero y libre de engaños; si la persona a quien el tribunal decretó padre (adoptivo), en realidad, verdaderamente lo es.

II

Establecía la sec. 2691 del Código de Enjuiciamiento Civil, -disposición vigente cuando ocurrieron los hechos del caso-, que la adopción se efectuaría mediante autorización del tribunal "previa **solicitud jurada** por la parte adoptante" en la que el interesado expondría las alegaciones para determinar la conveniencia de la adopción.

En la petición de adopción presentada por Ramón D. Martínez Soria, en el Tribunal Superior, Sala de San Juan allá para el 30 de noviembre de 1989, éste juró profesarle gran cariño y afecto paternal a Gladys de los Ángeles. A base de esta premisa esencial se decretó el estado filiatorio por adopción. Ahora bien, en el escrito presentado por Gladys de los Ángeles para dejar sin efecto la resolución de adopción

alegó en contrario, que cuando cumplió los veintiún (21) años de edad, allá para el 20 noviembre de 1993, buscó ayuda para mudarse del seno familiar y del control total al que estaba sometida. Adujo haber sido víctima de abuso sexual por su padrastro, luego padre adoptante, desde los trece años de edad de manera ininterrumpida hasta que se mudo. Expresó que "la causa y los motivos" que tuvo Martínez Soria durante el procedimiento de adopción sólo se circunscribieron a su intención de "tratar de retener[la]", y que "no mediaron propósitos sanos ni buenas intenciones de parte de Ramón Daniel durante el proceso de adopción, el cual fue fraudulento."

Ante la solicitud de desestimación presentada por la Procuradora Especial de Relaciones de Familia, el Tribunal de Instancia (Hon. Juez Myrta Irizarry Ríos) rehusó aplicar el término de dos (2) años del Art. 613-E del Código de Enjuiciamiento Civil[8] para solicitar la revocación. Por su parte, el Tribunal de Circuito (Hons. Jueces Alfonso de Cumpiano, Miranda de Hostos y Giménez Muñoz) revocó.

### III

El Art. 613-E regula el problema relativo a la eficacia de la resolución de adopción que dicte un tribunal y limita el plazo dentro del cual debe actuarse si se interesa su revocación.

Sin embargo, ante la prohibición constitucional de discrimen por razón de nacimiento, una acción que pretenda dilucidar el origen y las motivaciones de una filiación por adopción, no puede estar atada a una interpretación que conlleve un término para su ejercicio menor al que ostenta similar acción en casos de hijos biológicos. Es por ello que entendemos que el mencionado artículo sólo contiene las siguientes causales: vicios del procedimiento o vicios en el consentimiento.

Entre los **vicios del procedimiento** para los cuales el estatuto concede una causa de acción se encuentran: culminar la adopción sin

---

[8] Reza: "Transcurrido el período de dos años desde la fecha de la resolución del Tribunal autorizando la adopción, cualquier irregularidad en los procedimientos se considerará subsanada y la

citar ni oír a los padres biológicos, o mediante citación por edictos cuando debió citarse personalmente al padre natural, no oír al adoptado menor de edad cuando debió oírsele, o la falta del estudio e informe del Departamento de Servicios Sociales (cuando se trata de la adopción de un menor o incapacitado). Efraín González Tejera, Bienestar del Menor: Señalamientos en Torno a la Patria Potestad, Custodia y Adopción, 54 Rev. Jur. U.P.R. 409, 490-491 (1985).

Respecto a **vicios en el consentimiento**, tal como expresa la Juez Asociada señora Naveira de Rodón en su ponencia, uno de los requisitos sustantivos que requiere el procedimiento de adopción es el consentimiento. Si éste está viciado por error, dolo, intimidación o violencia puede anularse el decreto de adopción, siéndole aplicable el término de dos años del Art. 613-E que, siendo uno de caducidad –Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. 562 (1966)–, no permite causas de suspensión o interrupción.

No obstante, la acción de Gladys de los Ángeles se apuntala en una causa distinta a las contempladas por el aludido Art. 613-E. Sus alegaciones versan sobre una conducta anterior a la petición de adopción que, de probarse, impedían a Martínez Soria solicitar del tribunal este privilegio. No cabe duda que de probarse que abusó sexualmente de Gladys de los Ángeles desde que ésta tenía 13 años de edad, su petición de adopción sólo fue un subterfugio para continuar perpetuando un abuso que en nada contribuiría al bienestar de la peticionaria, como tampoco a su desarrollo físico, emocional, moral intelectual y social; propósitos que guían la institución de la adopción, tal y como expone elocuentemente el Juez Asociado, Sr. Fuster Berlingeri en su ponencia. En ese escenario, su petición sería una perjura y fraudulenta, y nula ab initio.

La Regla 49.2 de Procedimiento Civil establece las condiciones y remedios que se pueden conceder ante una alegación de fraude. En casos

validez de la adopción no podrá ser atacada directa ni colateralmente en ningún procedimiento." 32 L.P.R.A. sec. 2697.

de fraude entre partes la moción solicitando relevo debe presentarse dentro un término de seis (6) meses. Sin embargo, no existe limitación de tiempo alguno cuando la alegación se fundamenta en fraude al tribunal.

No tenemos la menor duda de que el trasfondo del presente caso configura potencialmente fraude al tribunal, a saber, "la preparación, el uso y la presentación en la vista del caso de prueba falsa obtenida por la parte adversa por medio del soborno y la instigación al perjurio...." Martínez v. Tribunal, 83 D.P.R. 358 (1961). Martínez Soria, según la alegaciones, no sólo ocultó información al tribunal sino que además la que le brindó bajo juramento era falsa.

Ante este cuadro, la única vía constitucional que no choca con el postulado en torno a la igualdad por razón de nacimiento es brindarle una oportunidad a Gladys de los Ángeles de probar sus alegaciones, que como hemos sentenciado, de ser ciertas darían pie al relevo de la resolución de adopción.

Suscribimos la Sentencia que revoca al Tribunal de Circuito y devuelva al Tribunal de Instancia para la celebración de una vista evidenciaria.


ANTONIO S. NEGRÓN GARCÍA
Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Ramón Daniel Martínez Soria**

    **Recurrido**

                          **CC-1997-390**

      **v.**

**Procuradora Especial de
Relaciones de Familia**

**Opinión concurrente emitida por la Juez Asociada señora NAVEIRA DE RODÓN**

San Juan, Puerto Rico, a 18 de mayo de 2000

    Por considerar que el fin último que persigue nuestra legislación de adopción es el bienestar del adoptado, estamos de acuerdo con el resultado a que llega la sentencia.

I

    Gladys de los Ángeles Martínez Montañez (en adelante peticionaria), hija del matrimonio de Eugenio Figarella Picó y Gladys Montañez Miranda, nació el 20 de noviembre de 1972. Al poco tiempo de su nacimiento, sus padres se divorciaron y la

peticionaria quedó bajo la custodia y patria potestad de su madre.

El 11 de julio de 1977, cuando la peticionaria tenía cuatro (4) años de edad, su madre contrajo nuevas nupcias con Ramón David Martínez Soria. El núcleo familiar quedó entonces compuesto por el matrimonio Martínez Soria-Montañez Miranda, las dos hijas del matrimonio anterior de la señora Montañez Miranda y, posteriormente, una hija fruto de este segundo matrimonio.

El 30 de noviembre de 1989, cuando la peticionaria contaba con 17 años de edad, el señor Martínez Soria peticionó ante el extinto Tribunal Superior, Sala de San Juan, la adopción de Gladys de los Ángeles y de su hermana mayor. Se acompañó la petición de adopción con dos declaraciones juradas, una del señor Martínez Soria y la otra del señor Figarella Picó, padre biológico de las hermanas. En la segunda declaración jurada se prestó el consentimiento a la solicitud de adopción hecha por el señor Martínez Soria. Se envió notificación a todas las partes y se elaboró un informe oficial por el entonces Departamento de Servicios Sociales de Puerto Rico. Además, se celebró una vista en la que testificaron a fines de consentir el señor Figarella Picó, el señor Montañez Miranda y las menores. Luego de estos trámites, el tribunal de instancia declaró con lugar la petición de adopción el 22 de enero de 1992. Para esta fecha Gladys de los Ángeles tenía 19 años de edad.

El 26 de abril de 1994, la peticionaria impugnó su adopción mediante una moción presentada ante el Tribunal de Primera Instancia, Sala Superior de San Juan. Señaló que su padre adoptante, el señor Martínez Soria, abusaba sexualmente de ella desde que tenía 13 años de edad, teniendo que "ejercer la función de mujer de éste durante más de seis años". Alegó que no fue hasta que advino a la mayoría de edad que buscó ayuda de parientes y amigos para mudarse del seno familiar porque había estado bajo una "férrea disciplina, supervisión y control" total por parte de su ofensor. Éste supervisaba excesivamente sus salidas mediante "beepers" y teléfonos, y no podía contar con el apoyo de su núcleo familiar, quienes prefirieron ignorar la situación.

El 16 de mayo de 1994 el tribunal de instancia emitió una orden en la cual le requirió a la peticionaria que notificara la solicitud de

impugnación a la Procuradora Especial de Relaciones de Familia (en adelante Procuradora), a la parte adoptante y a su representante legal. Inconforme con tal dictamen, la peticionaria solicitó reconsideración y el 17 de junio de 1994 el tribunal de instancia la declaró ha lugar y le eximió de tener que notificar el recurso según ordenado previamente. En esa misma fecha el tribunal dictó una orden en la que le requirió a la Procuradora que expresara su posición en torno a la impugnación.

La Procuradora compareció mediante moción presentada el 3 de agosto de 1994. Señaló que procedía la desestimación de la solicitud de impugnación ya que había transcurrido el término de dos años que dispone el Art. 613-E del Código de Enjuiciamiento Civil.

El 12 de septiembre de 1994, luego de varios trámites procesales, el tribunal de instancia finalmente denegó la solicitud para que se dejara sin efecto la resolución de adopción emitida en el caso de autos. Expresó el tribunal que, conforme al Art. 613-E, transcurrido el periodo de dos años, la adopción no puede ser atacada directa ni colateralmente en ningún procedimiento.

Inconforme con tal dictamen, la peticionaria recurrió ante nos el 13 de octubre de 1994. Al expedir el mandamiento de revisión, resolvimos que la sentencia recurrida se dictó sin jurisdicción, pues faltaban partes cuya presencia era indispensable para la correcta disposición de la causa.

Al devolverse el caso al tribunal de instancia, se notificó a las partes indispensables previamente omitidas. El 27 de diciembre de 1995, el señor Martínez Soria compareció mediante contestación a moción y solicitó que se dejara sin efecto resolución de adopción. Éste negó las alegaciones contenidas en el escrito de impugnación pero se allanó a la solicitud de la peticionaria.

El 10 de junio de 1996, la Procuradora compareció mediante escrito de cumplimiento de orden y sostuvo una vez más la aplicación del Art. 613-E del Código de Enjuiciamiento Civil sobre el término de caducidad de dos años para impugnar el decreto de adopción.

El tribunal de instancia resolvió mediante resolución emitida el 29 de octubre de 1996 que el término de caducidad de dos años establecido por el Art. 613-E del Código de Enjuiciamiento Civil debe comenzar a decursar contra los menores de edad a partir que éstos advengan a la mayoría de edad. De conformidad con esa determinación, el tribunal de instancia ordenó la continuación de los procedimientos y señaló una vista el 6 de marzo de 1997.

En desacuerdo con tal dictamen, la Procuradora solicitó la revisión de esta resolución. El Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) revocó la resolución del tribunal de instancia y dictó sentencia desestimatoria al determinar que la impugnación de adopción resulta improcedente al transcurrir el plazo señalado para instar la misma. Concluyó que, por su naturaleza, el plazo de caducidad no se puede interrumpir y, por lo tanto, su efecto ocurre automáticamente.

Inconforme, Gladys de los Ángeles Martínez recurrió ante nos y señaló, entre otras cosas, que el Tribunal de Circuito erró[9] al desestimar la causa de acción basado en que el término de caducidad del Art. 613-E es de aplicación a menores de edad.

En su señalamiento de error, la peticionaria alega que no mediaron propósitos sanos ni buenas intenciones durante el proceso de adopción de parte del padre adoptante. En consecuencia, aduce la peticionaria que su consentimiento a la adopción debe considerarse viciado. Al estudiar las alegaciones de la peticionaria y los documentos presentados, la controversia que se debió haber resuelto en los tribunales inferiores fue si en efecto hubo vicio absoluto de

---

[9] Se hicieron tres señalamientos de error. El único que discutiremos es el primer señalamiento, pues los otros dos carecen de mérito. Los dos señalamientos de error que no se discutirán son: (b) emitir una sentencia y posteriormente negarse a posponer los efectos de la misma cuando la representante legal de la recurrente estaba de vacaciones y así lo había notificado responsablemente al Tribunal, y (c) determinar que hubo una vista evidenciaria sobre este caso el 7 de agosto de 1996, ya que la Procuradora de Familia solicitó la suspensión de la misma.

consentimiento que impidiera al tribunal que decretó la adopción tener jurisdicción sobre la materia.

## II

El Art. 613-E del Código de Enjuiciamiento Civil, 32 L.P.R.A. § 2697 (1953), disponía[10]:

> Transcurrido el período de dos años desde la fecha de la resolución del Tribunal autorizando la adopción, cualquier irregularidad en los procedimientos se considerará subsanada y la validez de la adopción no podrá ser atacada directa ni colateralmente en ningún procedimiento.

Como expresáramos --citando al Profesor Guaroa Velázquez-- en Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. 562, 589 (1966):

> La prescripción no es una institución aplicable al derecho de familia, ya que la ley la configura para aplicarla solamente a la esfera del derecho privado (patrimonial) estableciéndola para proteger intereses individuales de que el particular pueda disponer; por tanto, no pueden estar sujetos a la prescripción los derechos que están fuera del comercio...

Debemos concluir que el periodo de dos años que concede el Art. 613-E es de caducidad y no de prescripción. Los plazos de caducidad y de prescripción tienen el mismo efecto extintivo y la finalidad común de impedir que permanezcan indefinidamente inciertos los derechos. Las diferencias entre un plazo y otro implican que el de *caducidad* siempre extingue el derecho a la causa de acción con el mero transcurso del tiempo; la finalidad es fijar de antemano el tiempo durante el cual puede ejercitarse un derecho; no admite causas de suspensión o interrupción del término ya que el efecto extintivo es

---

[10] La Ley Núm. 9 de 19 de enero de 1995 derogó este artículo. El Art. 19 del esta ley del 1995 dispone que la acción judicial sobre *anulabilidad* de la adopción decretada tiene que ser instada dentro del término de caducidad de un año a partir que advenga final y firme el decreto de adopción. 32 L.P.R.A. § 2699 (Supl. 1997).

radical y automático; el que se beneficie del término de caducidad no puede renunciar a su efecto ya que constituye un presupuesto negativo del derecho; no puede revivirse el término en su totalidad una vez se ha incurrido en él. Véase Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. 562, 599 (1966). Resulta sumamente importante aclarar y perpetuar la diferencia jurídica entre el término de caducidad y el concepto de prescripción.

El término que dispone el Art. 613-E es claramente de caducidad, pero determinar si éste decursó contra Gladys de los Ángeles mientras era menor de edad no es la controversia que debían resolver los tribunales inferiores, especialmente cuando la intención legislativa expresaba la contestación.[11]

III

La legislación en materia de adopción aplicable al caso de autos es aquella anterior a la Ley Núm. 9 de 1995.[12] Así, el Art. 135 del Código Civil, 31 L.P.R.A. § 536, disponía[13]:

> La adopción se verificará con el consentimiento del adoptado, si es mayor de edad; si es menor o está incapacitado, con el de sus padres o tutor, si fuere mayor de diez (10) años y no estuviere incapacitado, con *su propio consentimiento, además*, pero el Tribunal podrá dispensar este requisito cuando a su juicio exista causa para ello. (Énfasis nuestro.)

Al examinar los perfiles históricos de la adopción, su naturaleza y los propósitos en nuestra legislación, reconocemos que existe un

---

[11] Para la intención legislativa y el alcance del Art. 613-E en cuanto a la aplicación del término a los menores, véase, *Diario de Sesiones*, 1953, Vol. 2, Núm. 103, págs. 2374-2377.

[12] El proceso de adopción y la impugnación posterior por Gladys de los Angeles culminaron el 26 de abril de 1994.

[13] A pesar que el Art. 135 todavía está en vigor, la Ley Núm. 8 de 19 de enero de 1995, 31 L.P.R.A. § 535 (Supl. 1998), adicionó al Art. 134: "Las siguientes personas deberán, en presencia del tribunal, consentir a la adopción: (1) el adoptante o los adoptantes, (2) **el adoptado mayor de diez (10) años;** (3) el padre, madre o padres del adoptado que al momento de la adopción posean la patria potestad de éste." (Énfasis suplido.)

claro interés público en asuntos tan delicados como lo son el cumplimiento de los requisitos sustantivos y procesales de la adopción. M.J.C.A. v. J.L.E.M., 124 D.P.R. 910 (1989).

La Ley Núm. 86 de 15 de junio de 1953, 31 L.P.R.A. § 531 et seq., regula el aspecto sustantivo de la adopción. Además, establece los requisitos para ser adoptante; estipula la verificación del consentimiento del adoptado; y, dispone los efectos jurídicos de la adopción entre el adoptante y el adoptado. De la legislación surge claramente que uno de los requisitos sustantivos de la adopción es el consentimiento. Las personas mencionadas en el Art. 135, supra, están obligadas a prestar el consentimiento para que el Tribunal pueda verificar la adopción.

Los requisitos sustantivos para la adopción son jurisdiccionales, incumplir con alguno de éstos priva de jurisdicción al tribunal. El consentimiento del adoptado en los casos que proceda es un requisito sustantivo. M.J.C.A. v. J.L.E.M., supra pág. 921 (1989). Por lo tanto, si no se obtiene válidamente el consentimiento del adoptado mayor de 10 años y el tribunal no ha expresado justa causa para dispensar de éste, el tribunal no tiene jurisdicción para verificar y aprobar la adopción.

El consentimiento de las personas llamadas a darlo es la base emocional que fortalece la figura jurídica de la adopción. La verificación judicial de la adopción parte de la autorización de los involucrados. Espín Cánovas reitera que "la adopción requiere la aprobación judicial, pero la base de la misma es el consentimiento de las personas que van a quedar vinculadas por la adopción". *Manual de Derecho Civil Español,* Vol. IV, Madrid, Ed. Revista de Derecho Privado, 1984, págs. 407-408. "Es claro que tanto la prestación del consentimiento de los interesados como la aprobación judicial y otorgamiento de escritura son requisitos sin los cuales no existe la adopción". supra, pág. 415. No podemos pretender que el incumplimiento de un requisito se subsane con el cumplimiento de otro;

cada uno es esencial para la validez legal de la adopción. En consecuencia, sin el consentimiento no existe verificación judicial que convalide la adopción. El juez no puede decidir en contra de la voluntad de las personas que por ley están llamadas a consentir.

La importancia del consentimiento del adoptado se reconoció en la Convención Internacional de las Naciones Unidas sobre los Derechos de los Niños.[14] La Convención es el documento que provee la expresión internacional más abarcadora e importante sobre los derechos de los niños y jóvenes.[15] El Art. 12 de dicha Convención plasma el deber de los Estados de asegurarse que los niños capaces de formular sus opiniones puedan expresarlas, sopesándolas de acuerdo con la edad y madurez del niño. Se le debe dar al menor la oportunidad de ser oído en cualquier procedimiento judicial o administrativo que les afecte.

Al analizar la importancia sustantiva del consentimiento en el proceso de adopción es forzoso concluir que éste no puede estar viciado. Hemos expresado repetidamente que los vicios del consentimiento son el error, el dolo, la intimidación y la violencia. La doctrina de los vicios del consentimiento es aplicable al derecho de familia. Por ejemplo, el error de la persona, la intimidación y la violencia vician el consentimiento en el matrimonio. Por otra parte, para impugnar el reconocimiento filial de una persona por vicio de consentimiento se requiere probar error determinante, dolo, violencia o intimidación. *Rivera v. Rivera*, 78 D.P.R. 908, 911 (1956). Así pues, la acción de impugnación del reconocimiento por vicio del consentimiento es una independiente, siendo inmaterial si el reconocido es o

---

[14] En 1989 la Asamblea General de las Naciones Unidas adopta por unanimidad la Convención a través de la Resolución 44/25. La Convención fue *ratificada* por la mayoría de los países del mundo excepto Estados Unidos y Somalia.

[15] Entre los puntos que se le dio más énfasis en la Convención figura la consideración que se le debe dar a las opiniones de los menores.

no hijo del impugnador. Almodóvar v. Méndez Román, 125 D.P.R. 218, 243 (1990). Esta acción prospera si el impugnador muestra a satisfacción del tribunal que actuó movido por error, violencia e intimidación. Almodóvar v. Méndez Román, supra pág. 243. La determinación de vicio del consentimiento anula el acto donde se requiere ese consentimiento; si el vicio engendra *falta absoluta* de consentimiento, el acto es inexistente. En la determinación de vicio del consentimiento hay que distinguir si éste produce la anulabilidad del proceso o si, por otra parte, provoca la nulidad.

Al consentimiento en el procedimiento de la adopción le es aplicable la doctrina de los vicios de la voluntad. Véase a Lacruz y Sancho en *Elementos de Derecho Civil: Derecho de Familia*, Barcelona, Ed. Bosch, 1982, pág. 696. Si el consentimiento a la adopción está viciado por error, dolo, intimidación o violencia, el acto de adopción es *anulable*. Por otro lado, si el vicio es absoluto, hace *inexistente* el consentimiento, no se cumple con uno de los requisitos sustantivos y priva al tribunal de jurisdicción para decretar la adopción.[16] En estos casos, el acto de adopción es *nulo*. "Tienen aplicación a la adopción las normas generales sobre nulidad de los negocios jurídicos, con las debidas adaptaciones a la especial naturaleza del acto de la adopción". Espín Cánovas, *Manual de Derecho Civil Español*, Vol. IV, Madrid, Ed. Revista de Derecho Privado, 1984, pág. 423.

Citando a Bossert[17], en *Almodóvar v. Méndez Román*, 125 D.P.R. 218, 242 (1990) expresamos que:

> históricamente la doctrina [de la impugnación de reconocimiento] ha distinguido entre la acción de *nulidad de reconocimiento* y la de *impugnación del mismo*. La primera hace *inexistente* el acto del

---

[16] "Los requisitos sustantivos para ser adoptante son jurisdiccionales. Su incumplimiento priva de jurisdicción al tribunal... Otros requisitos sustantivos son: el del consentimiento del adoptado en los casos que proceda, el de sus padres o tutor cuando sea necesario y el del padre que lo haya reconocido". M.J.C.A. v. J.L.E.M., 124 D.P.R. 910, 921 (1989).

[17] G.A. Bossert, *Régimen legal de filiación y patria potestad*, 2da ed., Buenos Aires, Ed. Astrea, 1987, pág. 245.

reconocimiento al faltar algún requisito que impide la eficacia del acto jurídico. Así faltará un requisito de eficacia si falta, por ejemplo, 'el consentimiento del reconocido, o la aprobación judicial o el consentimiento del representante legal, o el consentimiento de los descendientes del reconocido ya fallecido...' Peña y De quirós, *De la paternidad y filiación*, en M. Amorós Guardiola, *Comentarios a las reformas del derecho de familia*, Madrid, Ed. Tecnos, 1984, Vol. I, pág. 936. En cambio, la acción de impugnación de reconocimiento, strictu sensu, 'ataca o controvierte su contenido...'. Bossert, *op. cit.*, pág. 245.

Así pues, el tribunal puede declarar la nulidad de un decreto de adopción que fue dictado en violación de los requisitos jurisdiccionales del procedimiento de adopción porque se trata de un decreto emitido sin jurisdicción sobre la materia y puede ser atacado colateralmente en un pleito independiente. M.J.C.A. v. J.L.E.M., 124 D.P.R. 910 (1989). Una orden dictada sin jurisdicción es inexistente y lo inexistente no es susceptible de convalidación con efecto retroactivo. Casanovas & Cía. v. Trib. de Apelaciones, 61 D.P.R. 56, 61 (1942). Además, una sentencia puede ser atacada colateralmente cuando la misma ha sido dictada sin jurisdicción. Pérez v. Trib. De Distrito, 70 D.P.R. 656; Cancel v. Martínez, 74 D.P.R. 108, 114 (1952).

La falta de jurisdicción sobre la materia conlleva las siguientes consecuencias inexorablemente fatales: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal ni el tribunal lo puede hacer motu proprio; (3) los dictámenes son nulos (nulidad absoluta); (4) los tribunales deben auscultar su propia jurisdicción; (5) los tribunales apelativos deben examinar la jurisdicción del foro de donde procede el recurso; (6) y, el planteamiento sobre jurisdicción sobre la materia puede hacerse en cualquier etapa del procedimiento por cualquiera de las partes o por el tribunal motu proprio. Vázquez v. A.R.P.E., 128 D.P.R. 513, 537 (1991). En conclusión, la falta de

jurisdicción sobre la materia acarrea la nulidad de todo procedimiento.

La importancia del efecto de la falta de jurisdicción sobre la materia está plasmado en la Regla 10.8 de Procedimiento Civil, 32 L.P.R.A. Ap. III,[18] la cual expresa que ésta no es una defensa renunciable. La Regla 42.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, por su parte, dispone que "el tribunal tendrá facultad para conocer de procedimientos de jurisdicción voluntaria, ex parte, que son todos aquellos en que sea necesario, o se solicite, la intervención del juez, sin estar empeñada ni promoverse cuestión alguna entre partes conocidas y determinadas, *siempre que tenga jurisdicción sobre la materia*". (Énfasis nuestro.)

Estamos ante una acción de nulidad de los procedimientos y no ante una acción de impugnación de adopción. La primera acarrea la nulidad e inexistencia del proceso de adopción y la segunda meramente su anulabilidad; la primera no se deja llevar por término prescriptivo o de caducidad alguno puesto que falta jurisdicción sobre la materia, mientras que a la segunda le aplica el Art. 613-E y su término de caducidad de dos años. El título de la moción presentada por la peticionaria aludía a dejar sin efecto la resolución de adopción, pero su contenido implicaba una acción de nulidad del proceso de adopción.[19] Más que dejarnos llevar por el título debemos escudriñar el contenido de la moción. Del contenido surge claramente que estamos ante una acción de nulidad y no una de mera impugnación.

Tenemos el deber de procurar que los remedios que incidan sobre la tramitación de los casos tiendan a promover la solución de los

---

[18] El inciso (c) de la Regla 10.8 de Procedimiento Civil, supra, lee: "Siempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el pleito".

[19] "El título no era determinante, sino su contenido". Andino v. Topeka, Inc., Op. de 10 de abril de 1997, 142 D.P.R. ___; 97 JTS 46, p.876; de manera ilustrativa véase Progressive Finance v. LSM General Construction, Sentencia de 4 de febrero de 1998, 98 TSPR 9, 98 JTS 8.

méritos de las controversias y la consecución de la justicia. En el caso ante nos, los tribunales inferiores se limitaron a considerar y resolver una cuestión que podría ser relevante posteriormente, esto es, si el término dispuesto en el Art. 613-E corrió contra la peticionaria durante la minoridad,[20] y omitieron entrar en los méritos del caso. Lo que los tribunales inferiores debieron haber determinado es si el consentimiento de Gladys de los Ángeles estuvo viciado al punto de hacer patente el incumplimiento de un **requisito sustantivo** y jurisdiccional. Luego de esta determinación es que podría ser relevante la discusión del término de caducidad del Art. 613-E, el cual dispone que una vez transcurrido el periodo de dos años cualquier irregularidad **en los procedimientos** quedará subsanada. Cualquier irregularidad en es aspecto sustantivo, por otra parte, podría significar la falta de jurisdicción.

Si se determina que el consentimiento prestado por la peticionaria no estuvo viciado, el término de caducidad entraría en discusión. De resolverse que el consentimiento estuvo absolutamente viciado, el tribunal nunca tuvo jurisdicción por lo que el pronunciamiento de adopción es radicalmente nulo.

La peticionaria arguye, con razón, que no ha podido fundamentar con prueba pertinente los señalamientos en que se basa su caso por no habérsele permitido un día en corte. Los señalamientos de la peticionaria de que fue abusada sexualmente desde la edad de 13 años por su padre adoptivo y que no pudo buscar ayuda hasta que advino la mayoría de edad deben dilucidarse en los méritos ya que implican una gravedad de alto interés social. Responde al interés social de aquilatar los efectos del abuso de menores o, por otro lado, reivindicar la reputación del padre adoptante. Hay que resaltar que el Art. 34 de la Convención de los Derechos de los Niños dispone que es

---

[20] Este tema lo discutió extensamente la Legislatura cuando adoptó el Art. 613-E y eliminó la disposición que le otorgaba al adoptado la oportunidad de impugnar la adopción una vez adviniera la mayoría de

un deber del Estado proteger al niño de toda clase de abuso sexual. En consecuencia, las alegaciones de abuso sexual deben confrontarse y dilucidarse directamente en el tribunal para el bien de ambas partes. El tribunal de instancia debe determinar si en efecto hubo o no el abuso sexual alegado para así exponer si éste infligió algún vicio absoluto en el consentimiento de Gladys de los Ángeles.

Como no se dilucidó el caso en sus méritos en el tribunal de instancia, no estamos en posición de formular la determinación de vicio absoluto de consentimiento. En consecuencia, también devolveríamos el caso al tribunal de instancia pero para que determine la existencia o no de algún vicio de consentimiento que afecte la jurisdicción del tribunal.


Miriam Naveira de Rodón
Juez Asociada

---

edad. Véase, 4 Diario de Sesiones de la Asamblea Legislativa 2374-2380, Vol. II (1953).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ramón Daniel Martínez Soria

    Recurrido


       vs.                 CC-1997-390      Certiorari


Ex Parte

Procuradora Especial de
Relaciones de Familia



Opinión Concurrente emitida por el Juez Asociado señor FUSTER BERLINGERI.


San Juan, Puerto Rico, a 18 de mayo de 2000.



Concurro con el resultado anunciado en la Sentencia del Tribunal por entender que en este caso el Artículo 613E del Código de Enjuiciamiento Civil, que fija un término de caducidad para la impugnación de una adopción, no le impide a la peticionaria presentar la acción que está en controversia.

En el caso de autos, la recurrente Gladys de los Angeles Martínez Montañez impugnó su adopción, **a los cinco (5) meses de haber cumplido 21 años de edad**. Alegó que al cumplir dicha edad abandonó su hogar, con la ayuda de familiares y amigos, para ubicarse en un hogar sustituto. Explicó que se vio obligada a desertar del hogar en que vivía debido a que desde los trece (13) años, había sido compelida diariamente a actos sexuales de toda naturaleza por parte de su padrastro y padre adoptante, Martínez Soria,

"ejerc[iendo] la función de mujer de éste durante más de seis (6) años".

Indicó además la peticionaria que no había podido instar la acción de impugnación de adopción con anterioridad porque hasta el momento en que lo hizo había estado bajo una "férrea disciplina, supervisión y control" total por parte de su ofensor "siendo monitoreada mediante 'beepers' y teléfonos", y porque no contaba con el apoyo de su núcleo familiar, quienes conocían la situación pero prefirieron ignorarla. Argumentó que el proceso de adopción fue fraudulento, toda vez que el motivo que había tenido Martínez Soria para adoptarla fue precisamente tratar de retenerla a su lado para continuar el curso de su abuso sexual, en lugar de mediar propósitos sanos y buenas intenciones. Manifestó, además, que no tenía interés en conducir procedimiento criminal alguno contra su padre adoptante; que lo único que deseaba era que se dejara sin efecto la resolución de adopción, para no llevar más el apellido ni constar como hija de aquél que la mancilló desde sus años púbiles, impidiéndole un desarrollo emocional sano y convirtiendo el proceso de adopción en un instrumento más de su control perverso... "pues permanecer con [ese] apellido constituye una violación emocional".

Con arreglo a estas alegaciones, la recurrente impugnó su adopción fundamentándose para ello en que el procedimiento de adopción no sólo fue fraudulento, porque su anuencia fue producto de la intimidación, sino que, además, dicho procedimiento fue contrario a los mejores intereses y el bienestar suyo, y no fue realizado por lo tanto para la protección y beneficio de la adoptada.

Es en el contexto de estas **circunstancias tan extraordinarias y graves** que nos corresponde decidir el alcance del término de dos (2) años que establecía el Artículo 613 E de la Ley de Procedimientos Legales Especiales, 32 L.P.R.A. sec. 2697, para impugnar una adopción, que era la disposición vigente cuando ocurrieron los hechos del caso de autos. Veamos.

**I**

**—A—**

La adopción es el negocio jurídico de Derecho de Familia en cuya virtud nace entre dos personas extrañas —adoptante y adoptado— un vínculo de parentesco civil del que derivan relaciones análogas a las que resultan de aquellas filiales por naturaleza, extendiendo los beneficios que tiene todo miembro de una familia a quien carece de ella, paliando así la ausencia de calor familiar. J. Puig Brutau, IV Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 217 (1985); F. Puig Peña, V Compendio de Derecho Civil Español, Madrid, Ed. Pirámide (1976); E. Ruiz Vadillo, Introducción al Estudio Teórico Práctico del Derecho Civil, Madrid, Ed. Ochoa (16a. Ed. 1987). **Responde a la exigencia insoslayable de protección que todo menor tiene, con el propósito de garantizar el desarrollo armónico e integral de su personalidad**. Por medio de la adopción se incardinan muchos menores abandonados a unos padres que como hijos suyos los reciben, con todas sus consecuencias jurídicas. L. Mendizábal Oses, Derecho de Menores: Teoría General, Madrid, Ed. Pirámide (1977). De esta forma, se extinguen totalmente los vínculos jurídicos entre el adoptado y su familia biológica o anterior. Para todos los fines, el adoptado se considera como si hubiera nacido hijo del adoptante. Feliciano Suárez, Ex Parte, 117 D.P.R. 402 (1986); Ex Parte J.A.A., 104 D.P.R. 551 (1976); Rivera Coll v. Tribunal Superior, 103 D.P.R. 325 (1975); Valladares de Sabater v. Rivera Lazú, 89 D.P.R. 254 (1931).

En este procedimiento —estrictamente reglamentado, tanto por el Código Civil como por la Ley de Procedimientos Legales Especiales— deben coincidir el asentimiento de los particulares, el permiso de la ley y la aprobación judicial. J.M. Manresa, Comentarios al Código Civil Español, 112 (7a. ed. 1957), según citado en Feliciano Suárez, supra.

La institución de la adopción, como la conocemos hoy día, ha sufrido una serie de cambios fundamentales a través de la historia. En un principio era al adoptante al que se trataba de proteger. En nuestros tiempos —tanto en nuestra legislación como en la gran mayoría de las legislaciones consultadas— **la institución se fundamenta en la conveniencia de la adopción**

**para el adoptado**. **En la actualidad, el bienestar del hijo adoptivo es el interés jurídico a proteger**. J.L. Vázquez Olivo, La Adopción: ¿Habrá Posibilidad de Liberalizar su Reglamentación?, 53 Rev. Jur. U.P.R. 386, 387 (1984); R.M. Moreno Florez, Acto Constitutivo de la Adopción, Madrid, Ed. Colex, 76 (1985). Feliciano Suárez, supra; Ex Parte J.A.A., supra. La legislación vigente tiene el propósito fundamental de brindarle a niños sin padres la oportunidad de criarse en un hogar donde los puedan atender debidamente, Feliciano Suárez, supra; y donde se les proporcione el bienestar y la felicidad que un hogar normal pueda asegurarle a un individuo. Este principio es común a todos los países, irrespectivamente de su sistema político, social o jurídico. Vázquez Olivo, supra.

Hoy día se puede afirmar indubitadamente, pues, que la institución de la adopción existe para salvaguardar principalmente el interés **del adoptado**, Ex Parte Warren, 92 D.P.R. 299, 302 (1965), **buscando satisfacer sus necesidades subjetivas fundamentales de afecto y protección, para que alcance el pleno desarrollo físico, emocional, moral intelectual y social, de forma integral**. Mendizábal Oses, supra, a la pág. 235; M.J.C.A., Menor v. J.L.E.M., Menor, 124 D.P.R. 910 (1989).

A la luz de lo anterior, es evidente que utilizar la adopción de un menor para abusar de éste, y para explotarlo como instrumento sexual, constituye una horrible corrupción y deformación de dicha institución jurídica, que no debe tolerarse.

–B–

La adopción se considera perpetua, en el sentido de que no puede existir en su constitución interferencia restrictiva alguna en cuanto al tiempo que ha de durar dicho estado. Puig Peña, supra, a la pág. 488. Por su propia naturaleza, es irrevocable. Mendizábal Oses, supra, a la pág. 244. Al respecto, explica Puig Brutau que tal "irrevocabilidad del decreto de adopción", configurada en los estatutos que regulan la institución, significa que la subsistencia del estado civil creado por la adopción no puede quedar a merced de un cambio de voluntad o resolución unilateral del

adoptante, y tampoco de una anuencia entre las partes. Puig Brutau, _supra_, a la pág. 239. No podría ser de otro modo; la asimilación total del hijo adoptivo al legítimo no sería posible si la adopción no fuera acompañada de esta irrevocabilidad. H.E. Gatti, _Estudios sobre Derecho de Familia_, Montevideo (1966).

Ello no obstante, nos señala Puig Peña que de lo anterior no se infiere necesariamente que la adopción tenga que subsistir _ad perpetuam_ "pues sobre ésta deben también valer los principios que informan la cesación de los institutos jurídicos". Puig Peña, _supra_. Remontándonos a Las Siete Partidas, promulgadas en los albores de 1256, encontramos que desde aquellos tiempos, en la Partida 6, Tit. XIX, Ley V, se reconoció que el vínculo entre adoptado y adoptante era susceptible de quebrantamiento, concediéndole al menor el beneficio de la restitución, en los siguientes términos:

> Quando el menor de edad es porfijado de tal ome, _que le muestre malas maneras_, o que le desgaste lo suyo, puede pedir al juez del lugar que le torne en aquel estado en que era antes que le oviesse forfijado, e el juez debelo fazer. (Enfasis nuestro).

J.E. Coll & L.A. Estivill, _La Adopción e Instituciones Análogas_, Buenos Aires, Ed. Tea 356 (1947). Como veremos más adelante, la doctrina española sostiene aún dicho principio.

En específico, y de aplicación al caso de marras, se ha reconocido que el hijo adoptivo puede modificar su condición de tal, por medio del ejercicio de la acción judicial modificativa de estado, llamada de impugnación de adopción. J.A. Rodríguez Carretero, _La Persona Adoptada_, Madrid, Ed. Montecorvo, S.A., 60 (1973).

–C–

Nuestra ley sobre adopción ha reconocido el carácter permanente y la naturaleza invulnerable que debe permear la institución, estableciéndose así un limitado término para el ejercicio de la acción de impugnación. Regía la misma el Art. 613 E de la Ley de Procedimientos Legales

Especiales, sección 2697 del Código de Enjuiciamiento Civil, 32 L.P.R.A.

sec. 2697, que rezaba:

> Transcurrido el período de dos (2) años desde la fecha de la resolución del tribunal autorizando la adopción, cualquier irregularidad en los procedimientos se considerará subsanada y la validez de la adopción no podrá ser atacada directa ni colateralmente en ningún procedimiento.

Nótese, de entrada, que el estatuto referido no alude y nada dispone sobre si el término que establece es uno de caducidad o de prescripción.[21]

Ello no obstante, conocido es el principio general que en las acciones de Derecho de Familia no hay lugar para los términos de prescripción "por no ser de índole patrimonial, es decir, porque no están dentro del comercio de los hombres". W. Cortés Burgos, El problema de la caducidad en la filiación, 86 Rev. Der. Puertorriqueño 186 (1983). Por su parte, sabido es que la caducidad, de ordinario, incide sobre aquellos derechos potestativos o de configuración o modificación de una situación jurídica que exigen la fijación rápida, inmutable y definitiva de cierto estado. L. Díez-Picazo & A. Gullón, I Sistema de Derecho Civil, 480 (7a. ed. rev. 1989).

Sobre el particular en Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. 562, 589 (1966), citando al profesor Guaroa Velázquez, apuntamos que "la prescripción no es una institución aplicable al derecho de familia". Puede afirmarse, además, que por su propia naturaleza de acto constitutivo de estado civil, sumado al lenguaje y propósitos del estatuto que nos

---

[21] La prescripción es un derecho subjetivo sometido a la voluntad del perjudicado. La caducidad es un derecho objetivo provisto por ley. Tienen como rasgo en común que el transcurso del tiempo afecta el derecho o la prerrogativa y que sus efectos son similares: la expiración del plazo entraña la expiración del derecho o prerrogativa, y por el contrario, el cumplimiento del acto o el ejercicio de la acción en tiempo útil salvaguarda su existencia. Contrario sensu, las notas diferenciales más notables entre una y otra son las siguientes: (a) la caducidad puede ser apreciada tanto a instancia de parte como de oficio, por el Tribunal, la prescripción es estimable únicamente a instancia de parte; y, (b) la caducidad no admite la interrupción del tiempo, operando el transcurso del mismo como origen de ella, mientras que la prescripción es susceptible de interrupción. Ortiz Rivera v. Sucn. González Martínez, 93 D.P.R. 562 (1966).

La caducidad encuentra su fundamento exclusivo en la necesidad de dar seguridad al tráfico jurídico, Cortés Burgos, supra; De Jesús v. Chardón, 116 D.P.R. 238 (1985); y se evita únicamente por el ejercicio de la acción, que en este caso es una de contestación de estado, denominada de impugnación. Santiago Ojeda v. Cruz Maldonado, 109 D.P.R. 143, 146 (1979).

ocupa, no arrojan dudas sobre que el plazo en cuestión es de caducidad. Esta conclusión resulta también evidente en la enmienda que hizo la Ley Núm. 9 de 19 de enero de 1995, disponiendo expresamente que el plazo para impugnar una adopción es un término de caducidad.[22]

El establecimiento de este limitado período de dos (2) años refleja el propósito legislativo de preservar la seguridad jurídica y la estabilidad familiar, a los fines de fijar permanentemente una relación inmutable revestida de ciertas consecuencias jurídicas, Valladares de Sabater v. Rivera Lazú, supra; anulando, así, la posibilidad de que el nuevo estado civil del hijo adoptivo quedara al libre arbitrio de los adoptantes, de él mismo, e incluso de ambos. En específico señalamos en M.J.C.A., Menor v. J.L.E.M., Menor, supra, que con la adopción

> se persigue el propósito de que al adoptado se le provea, **con carácter permanente**, un hogar donde se le brinde cariño, cuidado, protección y seguridad económica, social y emocional, así como lo esencial para un crecimiento y desarrollo saludable. (Enfasis nuestro).

Adviértase, sin embargo, que si bien el aludido estatuto establece un término específico para ejercitar dicha acción de impugnación, lo hace sin especial atención al sujeto que la impugna, lo cual plantea el problema ante nos. Debemos llenar, pues, la laguna del estatuto[23] teniendo en mente el principio cardinal de hermenéutica, que hemos reconocido en múltiples ocasiones, de que **los estatutos de adopción deben interpretarse liberalmente, a favor del hijo adoptivo**, Feliciano Suárez, supra; Valladares de Sabater v. Rivera Lazú, supra; Ex Parte Ortiz y Lluveras, 42 D.P.R. 350, 356 (1931); de manera que se logren los fines sociales de nuestra legislación sobre adopción.

---

[22] El Art. 6130 de la Ley de Procedimientos Legales Especiales, según enmendada, dispone que el término en cuestión es de caducidad y lo reduce a un (1) año a partir del decreto de adopción. Como también establece el aludido término sin especial atención al sujeto que impugna la adopción, lo que aquí resolvamos le será aplicable.

[23] Es nuestra obligación llenar las lagunas legales, hasta tanto se pronuncie la Asamblea Legislativa, conforme el mandato del Artículo 7 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 7.

II

La controversia ante nos se limita estrictamente a la cuestión de si el término de dos (2) años que establecía el Art. 613 E de la Ley de Procedimientos Legales Especiales para impugnar una adopción, transcurría contra los hijos adoptivos menores de edad o, por el contrario, si para éstos quedaba suspendido hasta que advinieran a la mayoridad.

En su recurso, la peticionaria plantea que el término contenido en el Art. 613 E debe comenzar a contarse desde que el adoptado alcanza la mayoridad, por entender que ningún término de caducidad se puede aplicar válidamente contra menores o hijos adoptivos que eran menores de edad al momento de haberse emitido la resolución de adopción.

Por su parte, la Procuradora Especial de Relaciones de Familia, representada por la Oficina del Procurador General, se opone a la solicitud de la peticionaria por entender que el aludido término transcurre igual contra **todos** cuantos puedan ejercer la acción, por tratarse de un término de caducidad.

Huelga decir que los asuntos de menores están revestidos del más alto interés público y que los mejores intereses emocionales, físicos, económicos y psicológicos del menor deben ser siempre nuestro norte en la adjudicación de este tipo de controversia. Véase, M.J.C.A., Menor v. J.L.E.M., Menor, supra.

Si bien se ha reconocido que la caducidad, por el modo automático y directo de operar, no es susceptible de ser interrumpida, y normalmente, tampoco se dará en ella las causas de suspensión de la misma, Ortiz v. Sucn. González, supra, **existen instancias en que la caducidad sí se ha suspendido**. Una de estas circunstancias particulares es, precisamente, aquella que involucra menores de edad, por carecer éstos de capacidad jurídica para ejercitar el derecho de instar determinada acción. Así, por ejemplo, un hijo tendrá hasta cuatro (4) años **después de cumplir la mayoridad** para instar acción de filiación en caso de que su padre o madre haya fallecido. Art. 126 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 505. Este plazo es considerablemente más amplio que el dispuesto

para el resto de las personas que pueden llevar este tipo de acción, puesto que **"se espera hasta que el hijo pueda formar por sí juicio sobre tan importante asunto"**. <u>Ortiz v. Sucn. González</u>, <u>supra</u>.

En cuanto a la acción de impugnación de adopción específicamente, encontramos que en España, el adoptado menor de edad tiene hasta dos (2) años **después de llegar a la mayoría de edad** para ejercitar dicha acción. Puig Peña, <u>supra</u>. A idéntica conclusión se ha llegado en Perú, donde el menor o incapaz pueda impugnar la adopción **"dentro del año siguiente a su mayoría** o a la fecha en que desapareció su incapacidad." J.E. Castañeda, <u>Código Civil: Concordancias y jurisprudencia de la Corte Suprema al día</u>, Lima (3a. ed. 1966). En Chile, la acción de impugnación establece un plazo de caducidad de un (1) año que parece correr para todos por igual, razón por la cual la Ley de Adopción permite otra acción llamada de "Expiración de la Adopción". Bajo esta acción expirará la adopción si el adoptado, una vez cese su incapacidad, estima que no le es conveniente la adopción y dentro de un año así lo manifiesta en escritura pública. M. Somarriva Undurraga, <u>Derecho de Familia</u>, Chile, Ed. Ediar, 58 (1983). Por su parte, el código argentino dispone que se puede revocar la adopción "por acuerdo de partes manifestado judicialmente, **cuando el adoptado fuera mayor de edad"**. Nos parecen atinadas las expresiones de Zannoni, quien comentando dicho inciso nos dice que la referida acción, "por su naturaleza sólo es viable luego que el adoptado llega a la mayoría de edad puesto que antes no es plenamente capaz de obrar y menos aun de manifestar un consentimiento maduro". E.A. Zannoni, <u>Derecho de Familia</u> Vol. 2, Buenos Aires, Ed. Astrea (1978). El Código del Niño de Uruguay, por su parte, establece que la revocación de la adopción puede solicitarla tanto el adoptado como el adoptante "cuando existan motivos graves". No dispone un término fijo para el ejercicio de la acción, y deja a discreción del tribunal la determinación de qué es un "motivo grave" que justifique revocar la adopción. Código Civil Anotado de Uruguay, Tomo I, Montevideo, 1949. Añade Puig Peña, además, que "inclusive algunos autores –como Popineau– afirman, a propósito de un precepto semejante en su Código, que

la adopción sólo [debería] impugnarse por los menores cuando llegasen a la mayoría." Puig Peña, supra, a la pág. 488.

Como puede observarse, pues, al sopesar los intereses presentes, -el de la importancia y necesidad que para el Derecho tiene dar certeza al nuevo estado civil vis a vis el de los hijos adoptivos que tienen un derecho inalienable a una vida normal y feliz- hay un considerable número de jurisdicciones consultadas que avalan precisamente la posición postulada por la recurrente. El razonable principio rector derivado de la legislación de otras jurisdicciones, sumado a la palmaria intención de nuestro legislador -de brindarle a los niños menores, mediante la adopción, una mejor calidad de vida- claramente intiman la norma procedente para resolver el planteamiento ante nos.

Además, nuestras pasadas expresiones en materia de suspensión de la prescripción a favor de los menores de edad, por analogía, sugieren también la norma que debe regir el asunto ante nos, toda vez que la protección a los menores de edad -incapaces jurídicamente de instar una acción judicial- es la médula y el denominador común de ambos asuntos. En De Jesús v. Chardón, 116 D.P.R. 238 (1985), resolvimos que el tiempo que dure la minoría de edad no se considerará parte del tiempo fijado para que un hijo menor de edad inste la acción en daños heredada de su padre fallecido. Asimismo en Márquez v. Tribunal Superior, 85 D.P.R. 559 (1962), refiriéndonos a los menores de edad, expresamos que se deben **"proteger los intereses de los incapaces hasta el momento en que adquieren la capacidad jurídica necesaria para hacer valer sus derechos"**. A tono con dicho principio resolvimos que aunque el padre o tutor haya iniciado la acción de daños y perjuicios en representación del menor, "el término prescriptivo no corre contra el incapaz hasta que éste haya personalmente advenido a su completa capacidad jurídica". Márquez v. Tribunal, supra. Reconocimos entonces que a pesar de que las reglas que establecen los términos prescriptivos de las acciones están fundamentadas en consideraciones de orden público, cuando este principio choca con el de

protección de los intereses de los incapaces, esto último debe ser la norma que prevalezca.

Bajo el crisol de esta casuística, parece razonable concluir análogamente, en un caso como el que nos ocupa, que a pesar de la importancia y necesidad que para el derecho tiene asegurar la certeza e inmutabilidad del nuevo estado civil, éste debe ceder ante el apremiante interés del Estado de proteger el derecho de los incapaces. Ciertamente, antes de cumplir la mayoridad, es difícil que un hijo adoptivo, por sí solo, pueda impugnar la adopción, puesto que es jurídicamente incapaz y todavía está bajo los controles de su madre y/o padre adoptante(s), además de carecer de los medios y circunstancias propicias para hacerlo.

Lo anterior es particularmente cierto si el menor está sometido a diversas formas de abuso, vejámenes y atrocidades, bajo el control absoluto de su ofensor a quien considera su padre o madre, como se alega que ha sucedido en este caso. En este punto cobran vida nuestras expresiones de que el derecho a llevar una acción civil es un derecho fundamental, por lo que una regulación que elimina la causa de acción antes de que ésta pueda interponerse legítimamente constituye una abrogación de dicho derecho. Alicea v. Córdova, 117 D.P.R. 676 (1986). Incluso, cabe decir que algunos códigos civiles modernos, que regulan la institución de la caducidad, establecen que "es nulo el pacto con el que se establecen términos de caducidad que hacen excesivamente difícil a una de las partes el ejercicio de los derechos". García Amigo, supra, a la pág. 910.

### III

Las posturas doctrinales y jurisprudenciales mencionadas en los acápites anteriores, a la luz de los hechos del caso de autos, justifican resolver que el término en cuestión no transcurre contra el hijo que fue adoptado siendo menor de edad, y que este término comienza a decursar contra tal hijo adoptivo una vez éste advenga mayor de edad. Resolver lo

contrario constituiría un grave error. De ser ciertas las alegaciones en este caso, conllevaría ignorar lo crudamente denigrante y ofensivo que sería para la peticionaria no poder librarse de su carácter de hija adoptiva de quien tanto abusó de ella.

Por otro lado, las otras alternativas propuestas por otros Jueces de este foro requieren que la persona violada por el adoptante tenga que incoar **múltiples acciones judiciales**, incluso algunas que están mayormente fuera de su control, con todos los costos personales y económicos que ello acarrea, y con la incertidumbre de si todas dichas acciones serán exitosas. Además existen otros problemas que dichas alternativas no pueden resolver. Así pues, ¿qué sucede con la obligación que puede tener el adoptado de alimentar al padre adoptante, conforme a lo dispuesto en el Artículo 143 del Código Civil, 31 L.P.R.A. sec. 562? Más importante aun, si no se anula la adopción, ¿cómo se logra la **rectificación moral** que es necesaria para que la peticionaria pueda intentar lograr alguna paz real en su vida y para que puede superar el trauma emocional grave que ha sufrido? El cambio de nombre como alternativa es un remedio superficial para ello porque de por sí no rectifica nada, y la peticionaria, aun con un nuevo apellido, sigue siendo jurídicamente hija del adoptante que abusó de ella.

El interés de la estabilidad familiar **no está realmente en riesgo alguno en casos como el de autos**. La anulación de la adopción que solicita la recurrente sólo procedería en casos de causas extremas como la de este caso, en los cuales no hay posibilidad real alguna de vida familiar entre el adoptante y la adoptada. Con resolver que el término que aquí nos concierne transcurre a partir de la mayoría de edad del adoptado, no estaríamos abriendo las puertas para la inestabilidad de la generalidad de las adopciones, que de ordinario son auténticas, por lo que nadie ha de impugnarlas. Lo único que estaríamos haciendo al acceder a lo que pide la recurrente es proveerle protección a aquellos pocos que en circunstancias muy excepcionales han sufrido vejámenes y abusos como los del caso de autos. Se trata de una protección que este Tribunal históricamente le ha

ofrecido a los menores, a los incapaces, a los que han sido maltratados y abusados, cuyos intereses han tenido para este Foro usualmente el más alto valor. Resolver de otro modo al que pide la recurrente, daría más importancia a la retórica ilusoria de una supuesta estabilidad de la familia que al sufrimiento real y concreto de seres humanos que como menores han sido abusados, y que continúan padeciendo en carne viva el dolor y la indignación de tal vejamen. Constituiría convertir a este Tribunal en parapeto de lo inexistente, guardián de entelequias, en lugar de ser paladín de intereses humanos auténticos.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ramón Daniel Martínez Soria

    Recurrido

Ex parte

Procuradora Especial de          CC-1997-390       Certiorari
Relaciones de Familia


Opinión Disidente emitida por el Juez Asociado señor CORRADA DEL RIO.


San Juan, Puerto Rico, a 18 de mayo de 2000.

Nos corresponde interpretar el Artículo 613E de la Ley de Procedimientos Legales Especiales, 32 L.P.R.A. sec. 2697, que establecía un término de caducidad de dos (2) años para impugnar una adopción a los fines de determinar cuando comienza a transcurrir dicho término si quien impugna la adopción es el menor adoptado.[24] Por no estar de

---

[24] La Ley Núm. 9 de 19 de enero de 1995 derogó los artículos 612 a 613F de la Ley de Procedimientos Especiales que reglamentaban los procedimientos de adopción, aprobándose una nueva ley de adopción. Véase 32 L.P.R.A. sec. 2699 *et seq.* (Supl. 1997). No obstante, al momento de iniciarse la presente acción de impugnación de adopción el artículo 613E estaba vigente y es de aplicación.

acuerdo con la Sentencia que emite el Tribunal, disentimos.

I

La recurrente, Gladys de los Angeles Martínez, es la segunda hija biológica del matrimonio constituido por Gladys Montañez Miranda y Eugenio Figarella Picó. Los padres de la recurrente se divorciaron, quedando la recurrente bajo la custodia y patria potestad de su madre.

El 11 de julio de 1977, cuando la recurrente contaba cuatro años de edad, su madre contrajo matrimonio con Ramón Daniel Martínez Soria. El núcleo familiar estuvo compuesto desde entonces por el matrimonio Montañez Miranda-Martínez Soria, las dos hijas de la señora Montañez Miranda y posteriormente una hija habida como fruto de este matrimonio.

Cuando la recurrente ya había cumplido diecisiete años de edad, allá para el 30 de noviembre de 1989, el señor Martínez Soria, padrastro de la recurrente, peticionó ante el Tribunal Superior, Sala de San Juan, la adopción de la recurrente y su hermana, frutos del primer matrimonio de su esposa.

El 22 de enero de 1992, **contando la recurrente diecinueve años de edad**, el Tribunal efectuó la vista sobre la petición de adopción. Prestaron el consentimiento a la adopción, la madre biológica (esposa del padre adoptante) y el padre biológico de la recurrente, **así como la propia recurrente**. La adopción fue recomendada favorablemente por el Departamento de Servicios Sociales.

El tribunal de instancia aprobó, mediante sendas resoluciones, la adopción de la recurrente y la de su hermana por el padre adoptante el 22 de enero de 1992, ordenando la inscripción de rigor en el Registro Demográfico.

Dos años y tres meses después de decretadas las adopciones, el 26 de abril de 1994, la recurrente impugnó su adopción mediante moción presentada ante el tribunal de instancia.

En dicha moción alegó que cuando cumplió los veintiún años de edad, allá para el 20 de noviembre de 1993, buscó ayuda para mudarse del seno familiar y del control total al que era sometida. Adujo haber sido víctima

de abuso sexual por su padrastro, luego padre adoptante, desde los trece años de manera ininterrumpida hasta que se mudó del hogar.

En la súplica de su moción solicitó que no deseaba constar como hija del padre adoptante en el Registro Demográfico y no deseaba llevar el apellido de éste.

El tribunal de instancia dictó una orden el 16 de mayo de 1994 requiriendo a la recurrente notificar copia de la moción impugnatoria a la Procuradora de Relaciones de Familia y a la parte adoptante y su abogado. Ordenó a la Secretaría del Tribunal notificar copia de la moción a la Fiscalía de Distrito para procesar la acción criminal correspondiente.

La recurrente pidió la reconsideración de dicha orden el 31 de mayo de 1994. Indicó que había notificado su moción a la Procuradora de Relaciones de Familia. Repitió las alegaciones de su moción original. Cuestionó la autoridad o facultad del padre adoptante para expresar su consentimiento a lo solicitado y alegó que el consentimiento prestado por el padre adoptante en el procedimiento de adopción no era ratificado por ella. Pidió se dejara sin efecto la orden de notificar al padre adoptante o a su abogado con copia de su moción.

El tribunal de instancia, mediante orden de 22 de julio de 1994, luego de atender la referida moción de reconsideración, dictaminó que se le notificara al padre adoptante la moción, "por esta [sic] parte indispensable".

Mediante "Moción al Amparo de la Regla 43 de Procedimiento Civil sobre Solicitud de Determinaciones de Hecho y de Derecho Adicionales/Moción de Reconsideración" de 17 de agosto de 1994, la recurrente reiteró su interés en que se revocase la resolución de adopción y que se borrase el apellido de su padre adoptante de su inscripción de nacimiento; sostuvo que estuvo impedida por razón de controles familiares de recurrir al Tribunal hasta dos años y tres meses de emitida la resolución de adopción; alegó que el término de dos años no es de aplicación a los menores de edad; y expresó que "[s]e interesa de este Honorable Tribunal provea el remedio solicitado o determine cuál es el

remedio que deba ser radicado y se provea de las guías que esta parte debe seguir".

El tribunal de instancia, mediante resolución de 12 de septiembre de 1994, determinó que examinada la moción solicitando se deje sin efecto la resolución de adopción, así como la solicitud de reconsideración, la moción contestando moción de relevo y demás escritos presentados, resolvía declarar NO HA LUGAR la moción solicitando que se deje sin efecto resolución de adopción conforme al Artículo 613E del Código de Enjuiciamiento Civil, *supra.*

De dicho dictamen la recurrente acudió ante este tribunal mediante recurso de revisión.[25] Por Sentencia de 1ro de noviembre de 1995 devolvimos el caso al tribunal de instancia para que se unieran partes indispensables, a saber, el padre adoptante y el padre biológico.[26]

Así las cosas, continuaron los procedimientos en instancia. Se trajeron al pleito a las partes indispensables que faltaban. El padre adoptante compareció el 27 de diciembre de 1995, negando las alegaciones de la solicitud de impugnación de la adopción, allanándose, sin embargo, a que se dejase sin efecto la adopción. El padre biológico no compareció y le fue anotada la rebeldía.

El Tribunal de instancia señaló una vista en su fondo para el 7 de agosto de 1996.[27] Esta no se efectuó ya que debía ser una vista privada y se señalaron otros casos para la misma sala y, además, debido a que las partes entendieron que antes de dicha vista se debía resolver el planteamiento de derecho sobre la caducidad de la acción impugnatoria de la adopción.[28]

---

[25] Ramón Daniel Martínez Soria, Ex Parte, Tribunal Superior de Puerto Rico, RE-94-493.

[26] Véase Sentencia de 1ero de noviembre de 1995 en el caso RE-94-493, 95 J.T.S. 143.

[27] En la *Petición de Certiorari* se indica erroneamente la fecha de 7 de agosto de 1997 como la del señalamiento de la vista en su fondo.

[28] *Petición de Certiorari*, pág. 3; Alegato del Procurador General, pág. 4.

En vista de ello el Tribunal ordenó a las partes que sometieran memorandos de derecho en apoyo de sus respectivas posiciones, lo cual hicieron.

Mediante Resolución de 29 de octubre de 1996, notificada a las partes el 7 de noviembre de 1996, el tribunal de instancia resolvió que la acción de impugnación de la adopción no había caducado por entender que el término de caducidad de dos años para impugnar una adopción que establece el Artículo 613E de la Ley de Procedimientos Especiales, *supra,* comienza a contarse, en el caso de menores, a partir de la fecha en que éstos advengan a la mayoría de edad.

El Procurador General, no conforme con dicho dictamen, recurrió oportunamente mediante *certiorari* ante el Tribunal de Circuito de Apelaciones el 9 de diciembre de 1996.[29]

Luego de los trámites procesales correspondientes,[30] el Tribunal de Circuito de Apelaciones, mediante Sentencia de 17 de junio de 1997, archivada su notificación en los autos el 19 de junio de 1997, revocó la resolución del tribunal de instancia y desestimó la causa de acción de impugnación de la adopción.

El 9 de julio de 1997, la abogada de la aquí recurrente presentó ante el foro apelativo una moción solicitando se dejase sin efecto la notificación de la sentencia, sosteniendo que sorpresivamente ésta fue notificada el 19 de junio de 1997, mientras se encontraba de vacaciones. El 11 de julio de 1997 dicho foro denegó la moción, notificándose la resolución en esa misma fecha.

Inconforme con la Sentencia dictada por el Tribunal de Circuito de Apelaciones el 17 de junio de 1997, notificada el 19 de junio de 1997,

---

[29] El término de treinta (30) días para presentar el recurso vencía el 7 de diciembre de 1996 y se extendió hasta el 9 de diciembre de 1996, por ser el 7 y 8 de diciembre de 1996 días sábado y domingo, respectivamente.

[30] La recurrida en dicho procedimiento, aquí recurrente, presentó su alegato en oposición al *certiorari* el 5 de febrero de 1997 quedando el caso sometido. El 8 de mayo de 1997 la abogada de ésta presentó una moción solicitando la paralización de los procedimientos durante el período de 10 de junio a 10 de julio de 1997 por encontrarse de vacaciones fuera de

recurre ante nos Gladys de los Angeles Martínez, mediante petición de *certiorari* presentada oportunamente el 22 de julio de 1997. [31] Señala los siguientes errores:

1) Erró el Tribunal de Circuito de Apelaciones al desestimar la causa de acción de la parte aquí compareciente basado en que el término de caducidad del Art. 613-E (SUPRA) le es de aplicación a la peticionaria y por ende, a los menores de edad adoptados y al determinar que ese término de 2 años va dirigido por mandato legislativo, [en leguaje claro y sin lagunas], a <u>todas las personas</u> con interés en la impugnación de una adopción.

2) Erró el Tribunal de Circuito de Apelaciones en emitir una sentencia y posteriormente negarse a posponer los efectos de la misma cuando la representante legal de la parte perjudicada por esa sentencia estaba de vacaciones fuera de Puerto Rico y así lo había notificado responsablemente mediante moción con un mes de antelación a la determinación judicial.

3) Erró el Tribunal de Circuito de Apelaciones al determinar que hubo una vista evidenciaria en este caso el día 7 de agosto de 1996 ya que ese día la Honorable Procuradora de Familia le pidió a la juez la suspensión de la misma y las partes estuvimos contestes en no celebrar la vista sin que se resolviera el planteamiento de derecho sobre la caducidad o no de la acción.

Mediante Resolución de 26 de septiembre de 1997 acordamos revisar mediante *certiorari.* Habiéndose elevado los autos, la recurrente solicitó que se considerara la petición de *certiorari* como su alegato, a lo cual accedimos. El Procurador General presentó su alegato el 26 de enero de 1998, quedando el caso sometido.

II

El Artículo 613E del Código de Enjuiciamiento Civil, *supra,* dispone:

"Transcurrido el período de dos años desde la fecha de la resolución del tribunal autorizando la adopción, cualquier irregularidad en los procedimientos se considerará subsanada <u>y la validez de la adopción no podrá ser atacada directa ni colateralmente en ningún procedimiento.</u>" (énfasis suplido). [32]

_____

Puerto Rico. El Tribunal de Circuito de Apelaciones, sin embargo, nada proveyó sobre dicha moción.

[31] El término de treinta (30) días para presentar el recurso vencía el 19 de julio de 1997. Quedó prorrogado hasta el 22 de julio de 1997 por caer en un día sábado y por celebrarse el lunes 21 de julio de 1997 el día del natalicio de Don Luis Muñoz Rivera.

[32] Esta disposición, vigente cuando se inició la presente acción de impugnación de adopción el 26 de abril de 1994, fue derogada por la Ley Núm. 9 de 19 de enero de 1995, *supra,* la cual dispone en su artículo 19 que "[l]a acción judicial sobre la anulabilidad de la adopción decretada

Se trata de un término de caducidad y no de un término prescriptivo. En *Ortiz Rivera v. Sucn. González Martínez*, 93 D.P.R. 562, 565-576 (1966), discutimos extensamente la diferencia entre las figuras jurídicas de la "caducidad" y la "prescripción".

Entre los principios claramente enunciados en *Ortiz Rivera v. Sucn. González Martínez, supra,* pág. 572, reseñamos los siguientes:

> "Según Puig Peña: La caducidad 'es aquel instituto jurídico por virtud del cual, una vez expirado el plazo, que o bien la ley o bien la voluntad de los particulares establecen o asignan a la acción, <u>ésta ya no puede ser ejercitable en modo alguno.</u>' En la decadencia el tiempo tiene un influjo <u>decisivo y extintivo</u>, pero actúa a modo de plazo únicamente, sin tener en cuenta la negligencia o <u>imposibilidad del titular del derecho</u>. [...]La prescripción admite causa <u>de suspensión</u> y de interrupción. En la decadencia no tienen influencias estas causas, porque <u>el efecto extintivo es radical y automático</u>". (énfasis suplido).[33]

Más adelante, a la pág. 597, expresamos lo siguiente:

> "[...]Los códigos que guardan origen con el nuestro, el italiano, el francés, el español han conservado el mismo orden que el nuestro, por entender y con muy buen juicio, que la institución de la familia debe conservar su mayor claridad, su más segura identidad ante los otros grupos sociales y económicos que junto con ella forman la sociedad humana. Así todas las impugnaciones contra la legitimidad, la condición jurídica de cada uno de los miembros de una familia deben ejercitarse con diligencia y de no hacerse así debe caducar, tan pronto transcurra el plazo legal establecido por el derecho de familia, las acciones que puedan afectar la estructura ontogénica, el régimen tutelar, la distribución de las herencias familiares."

No hay razón por la cual debamos discriminar contra la paternidad por vía de adopción o contra la familia adoptiva frente a la familia biológica en la aplicación de estos principios para concluir que el término de dos años que establece el Artículo 613E, *supra,* es un término de prescripción y no un término de caducidad.

Además, como bien señala el ilustre Profesor Guaroa Velázquez:[34]

---

tiene que ser instada dentro del término de caducidad de un año a partir de la fecha en que el decreto de adopción advenga final y firme". 32 L.P.R.A. sec. 2699 (Supl. 1997).

[33] Ver además, Puig Peña, <u>Tratado de Derecho Civil Español</u>, ed. Revista de Derecho Privado, 1958, T.I., Vol. III, págs. 453-455.
[34] Guaroa Velázquez, <u>La Extinción de la Acción de Filiación en el Derecho Puertorriqueño</u>, 17 Rev. Col. Abog. P.R. 237, 245 (1957).

"La prescripción no es una institución aplicable al derecho de familia, ya que la ley la configura para aplicarla solamente a la esfera del derecho privado (patrimonial) estableciéndola para proteger intereses individuales de que el particular pueda disponer; por tanto, no pueden estar sujetos a prescripción los derechos que están fuera del comercio y no son susceptibles de disponibilidad por los particulares, entre los cuales derechos figuran los de filiación".

Es un principio general conocido que "en las acciones de Derecho de Familia no hay lugar para los términos de prescripción por no ser de índole patrimonial, es decir, porque no están en el comercio de los hombres"[35].

Específicamente, atendiendo la figura de la adopción, en *Valladares de Sabater v. Rivera Lazú*, 89 D.P.R. 254, 261 (1963) expresamos que "[n]o puede ignorarse que el propósito que anima la adopción es crear una relación permanente revestida de ciertas consecuencias jurídicas". (énfasis suplido). Véase, además, *M.J.C.A. v. J.L.E.M.*, 124 D.P.R. 910 (1989).

Precisamente por la certeza que deben tener las relaciones familiares hemos resuelto que los términos dispuestos por el Artículo 117 del Código Civil, 31 L.P.R.A. sec. 465, para que el esposo impugne la presunción de legitimidad de los hijos nacidos vigente el matrimonio es un término de caducidad y no de prescripción. *Calo Morales v. Cartagena Calo*, 129 D.P.R. 102 (1991).

Igualmente, es de caducidad y no de prescripción el término para las acciones de filiación que establece el Artículo 126 del Código Civil, 31 L.P.R.A., sec. 505. *Calo Morales v. Cartagena Calo, supra,* pág. 121.

El hecho de que el Art. 613E, *supra,* establece el término de caducidad de dos años para la impugnación de una adopción y que lo hace sin especial atención al sujeto que la impugna, significa que dicho término aplica *erga omnes*, sin que se reconozca por el legislador excepción de clase alguna. No se trata de una laguna en el estatuto; se trata de un claro mandato estatutario a los efectos de que transcurridos

dos años de la adopción "[l]a validez de la adopción no podrá ser atacada directa ni colateralmente <u>en ningún procedimiento</u>". (énfasis suplido).

Abrir las adopciones a una multiplicidad de acciones de impugnación cuando los hijos adoptivos lleguen a la mayoría

---

[35] W. Cortés Burgos, <u>El Problema de la Caducidad en la Filiación</u>, 86 Rev. Der. Puertorriqueño 186 (1983).

de edad representa un grave riesgo a la certeza y permanencia de las relaciones paterno-filiales sin que a su vez el menor quede mejor protegido. ¿Qué propósito legal, moral o práctico de protección al hijo adoptivo puede tener que se le permita impugnar la paternidad adoptiva cuando llegue a la mayoría de edad si precisamente por llegar a la mayoría cesa la custodia y la patria potestad por razón de emancipación? Ello debilita la institución de la familia adoptiva, exponiéndola a acciones judiciales innecesarias sin un fin justificado.

Si examinamos los hechos que dan lugar a la solicitud de la recurrente impugnando la paternidad – que su padre adoptante abusó de ella sexualmente – estaríamos creando una causa de acción de impugnación a la paternidad adoptiva que una hija biológica no tiene contra su padre bajo las mismas circunstancias[36]. Además, una causa de acción tardía e ineficaz ya que al llegar a la mayoría de edad ha cesado la custodia y la patria potestad por lo que legalmente la hija tiene otros remedios adecuados para salir de la ignominia a que alegadamente la sometió el padre y, ciertamente, no está obligada a vivir en su compañía.

Reiteradamente hemos resuelto que la adopción debe interpretarse liberalmente a favor de los hijos adoptivos. Examinados los casos en que así nos hemos expresado, observamos que son inaplicables a la controversia ante nos.

En *Feliciano Suárez, Ex parte*, 117 D.P.R. 402, 406 (1986), resolvimos que son transmisibles a los herederos de un coadoptante los derechos otorgados por el Art. 138 del Código Civil que permite que se le reconozcan al hijo adoptado antes de 1947 todos los derechos sucesorios de los herederos naturales.

En dicho caso expresamos lo siguiente sobre la adopción:

> "En nuestro ordenamiento la adopción es un acto jurídico solemne mediante el cual se sustituye totalmente el parentesco familiar biológico o natural de una persona por otro en un procedimiento judicial rigurosamente reglamentado, tanto por el Código Civil, Arts. 130-138 (31 L.P.R.A. secs. 531-539), como por el

---

[36] Obviamente, debe entenderse que de ser ciertas las alegaciones de abuso sexual, rechazamos tan despreciable conducta.

> Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 2691-2698. Manresa define la adopción como un acto `en virtud del cual la voluntad de los particulares, con el permiso de la ley y la autorización judicial, crea entre dos personas, una y otra naturalmente extrañas, relaciones análogas a las de la filiación legítima.´ J.M. Manresa, *Comentarios al Código Civil Español,* 7ma. ed. revs., Madrid, Ed. Reus, 1957, T. II, pág. 112".

Si con la adopción pretendemos que se creen entre dos personas relaciones análogas a la filiación legítima, ¿cómo se justifica que permitamos que se impugne la paternidad adoptiva por razón de abuso sexual cuando en el caso de la filiación legítima el abuso sexual de un padre hacia su hija no puede ser causa para impugnar la paternidad? ¿Por qué establecer una diferenciación entre la hija adoptiva y la hija biológica a los fines de permitir la impugnación de la adopción cuando se llegue a la mayoridad, si ya para entonces ha cesado la custodia y la patria potestad y la hija está en libertad de protegerse?

En *Valladares de Sabater v. Rivera Lazú, supra,* pág. 261, resolvimos "[q]ue en Puerto Rico, aún antes de 1947, la adopción creaba lazos de parentesco entre el adoptado y los familiares del adoptante con las consiguientes consecuencias jurídicas en el orden sucesoral".

Luego de así resolver, expresamos lo siguiente en dicho caso:

> "[...]No puede ignorarse que el propósito que anima la adopción es crear una relación permanente revestida de ciertas consecuencias jurídicas. Para todos los fines, el adoptado se consideraba como un hijo legítimo del adoptante, y ese es el status familiar que debe reconocérsele a todos los fines legales". (énfasis suplido).[37]

Esto implica que la permanencia, certeza y finalidad de la adopción son valores de enorme importancia, valores que quedan erosionados de abrirse a impugnación años después de la adopción, por hijos menores de edad al llegar a la mayoría, alegando abuso sexual, abuso físico, o abuso verbal. Remedio éste que no tienen los hijos contra sus padres biológicos; remedio éste que no es eficaz para evitar el abuso sexual o el maltrato porque se estaría ejerciendo luego de la emancipación por

---

[37] *Id.,* a la pág. 261-262

mayoridad, en que los hijos ya no están sujetos a la patria potestad y custodia de sus padres.

En *Ex Parte Ortiz y Lluveras*, 42 D.P.R. 350, 356 (1931), este Tribunal resolvió que los hijos adoptivos tienen derecho a heredar como herederos forzosos de la adoptante.

Entendemos que en estos tres casos se interpretó liberalmente la adopción a favor de los hijos adoptivos para equipararlos a los hijos legítimos, naturales o biológicos, no para establecer diferencias entre estos.

Ya hemos visto que el Art. 613E no es susceptible de ser interpretado de otro modo que no sea como claramente dispone: que la validez de la adopción no podrá ser atacada directa o colateralmente en ningún procedimiento luego de transcurrido el período de caducidad de dos años.

III

De otra parte, se nos pide que interpretemos desde cuándo debe computarse el término para impugnar la adopción. La parte recurrente plantea que en el caso de los menores adoptados, dicho término queda suspendido hasta que lleguen a la mayoría de edad. No nos persuade.

Dicha interpretación, además de colocarnos en la posición de reinventar la ley, es jurídicamente insostenible. Si se trata, como en efecto lo es, de un término de caducidad, es inconsistente con esta figura jurídica que el término para iniciar la acción quede en suspenso hasta la mayoría de edad, salvo disposición expresa de la ley.

En *Ortiz Rivera v. Sucn. González Martínez, supra,* pág. 573, dijimos taxativamente, citando a Puig Peña:

> [...]La prescripción admite causa de suspensión y de interrupción. En la decadencia no tienen influencias estas causas, porque el efecto extintivo es radical y automático". (énfasis suplido).

Claro está, si una ley expresamente establece un término de caducidad que comienza a correr a partir de la fecha en que se adviene a la mayoría de edad no se trata de una suspensión o interrupción del término, sino de la fijación del término original a partir de esa fecha. Este es el caso

del Artículo 126 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 505, que le concede al hijo cuatro (4) años después de cumplir la mayoría de edad para instar acción de filiación en caso del fallecimiento del padre o de la madre.

Si la intención legislativa hubiera sido que el término de caducidad para impugnar una adopción no comenzara a contarse hasta que un menor adoptado adviniera a la mayoría de edad, fácil le hubiera sido al legislador incorporar en el Art. 613E un lenguaje similar al del Art. 126, *supra.*

Además, el Art. 126 del Código Civil protege el derecho de un hijo a reclamar la filiación por lo que propende a fortalecer la permanencia de las relaciones paterno-filiales, mientras que la impugnación de la adopción atenta contra la permanencia de la relación paterno-filial.

Por otra parte, el hecho de que en algunas jurisdicciones se reconozca el derecho a impugnar la adopción a un hijo adoptado cuando adviene a la mayoría de edad por virtud de ley, no justifica que en nuestra jurisdicción, donde tanto se ha adelantado para equiparar al hijo adoptivo con el hijo biológico, incorporemos a la ley lo que nuestro legislador no incorporó.

En *M.J.C.A. v. J.L.E.M., supra,* hicimos una extensa reseña del desarrollo histórico de la adopción, desde tiempos remotos hasta el presente. Aunque existen elementos comunes entre el derecho aplicable a esta noble institución en Puerto Rico y otros países como España, en las distintas jurisdicciones se han desarrollado perfiles que no son idénticos a los nuestros.

En dicho caso reiteramos lo que este Tribunal expresó en *Rivera Coll v. Tribunal Superior,* 103 D.P.R. 325 (1975) como sigue:

> "De ahí que, en *Rivera Coll v. Tribunal Superior, supra,* pág. 327, expresamos que `[a] partir del 15 de junio de 1953, con la aprobación de las leyes Núm. 85 y Núm. 86 de ese año, 32 L.P.R.A. secs. 2691 [y 2692 a] 2698 y 31 L.P.R.A. secs. 531-539, respectivamente, tanto el procedimiento para la adopción como la figura jurídica de la adopción son el producto de nuestra autoctonía´."

Finalmente, debemos examinar los casos de *De Jesus v. Chardón,* 116 D.P.R. 238 (1985) y *Márquez v. Tribunal Superior,* 85 D.P.R. 559 (1962), con el fin de determinar si son aplicables a la controversia ante nos.

En *De Jesús v. Chardón, supra,* decidimos que el tiempo para instar una acción en daños que un menor heredó de su padre, no comenzaba a correr hasta que el menor llegara a su mayoría. Se trata, obviamente, de un término prescriptivo y no de caducidad y de una **acción patrimonial** y no una acción de derecho de familia.

*Márquez v. Tribunal Superior, supra,* trataba igualmente de una acción de daños y perjuicios por motivo de un accidente en que se vio envuelto un menor. Resolvimos que no estaba prescrita la acción hasta que el menor advenga a su capacidad jurídica. Nuevamente se trata de un caso de "prescripción" y no de "caducidad" donde se reclama un derecho patrimonial (dinero) y no una relación paterno-filial revestida por el principio que fortalece la permanencia de las relaciones de familia.

En estos dos casos, por tratarse de términos prescriptivos, se aplican los conceptos de "suspensión" y de "interrupción" que no son aplicables a los términos de caducidad.

De otra parte, resulta inútil e innecesario el vulnerar la certeza e inmutabilidad que permea la institución de la adopción recurriendo a la suspensión del término de caducidad impuesto por nuestra legislación, cuando existen remedios adecuados en ley que tendría disponible un menor, en casos como el de autos, para proteger sus derechos. Veamos algunos de estos remedios.

En primer lugar, según manifestó la recurrente, lo único que deseaba era que se dejara sin efecto la resolución de adopción "para no llevar más el apellido ni constar como hija de aquél que la mancilló... pues permanecer con [ese] apellido constituye una violación emocional".[38] Sin

---

[38] Una vez autorizada una adopción, la Ley de Procedimientos Legales Especiales exigía que la copia certificada de la

...continúa

[15] ...**continuación**

embargo, para lograr tal fin la recurrente tiene disponible un procedimiento ex parte de cambio de nombre. A esos efectos, el Artículo 31 de la Ley Núm. 24 del 22 de abril de 1931, según enmendada, 24 L.P.R.A. sec. 1231, dispone para el cambio, adición o modificación de nombre o apellido a instancia de parte interesada, presentando ante el tribunal la oportuna solicitud, expresando bajo juramento los motivos de su pretensión y presentando la prueba pertinente en apoyo de su solicitud. Dicho cambio o modificación de nombre o apellido, se verificará entonces en el Registro Demográfico tachando en el certificado el nombre sustituido y consignando el nuevo nombre autorizado por el tribunal.

Por otra parte, en caso de que una hija adoptada, como la de autos, no desee que le herede el padre adoptante que cometió abusos sexuales en su contra, podría desheredarlo a tenor con los Artículos 779 y 685 del Código Civil, 31 L.P.R.A. sec. 2457 y 2261, respectivamente. Dichos artículos, en lo pertinente, disponen que será justa causa para desheredar a los padres y ascendientes el que éstos prostituyeren a sus hijas o atentaren contra su pudor. (énfasis suplido).

En cuanto a los adoptados que, debido a su minoría de edad, todavía se encuentran bajo la custodia y patria potestad del padre o madre adoptivos, es de observar que existen también remedios protectores en ley para despojarle de dicha custodia o patria potestad. Con arreglo a ello, el Código Civil dispone para que un menor que hubiere cumplido los dieciocho (18) años de edad pueda ser emancipado por decisión judicial aún en contra de la voluntad de sus padres, cuando éstos le diesen mal trato o ejemplos corruptores. 31 L.P.R.A. sec. 912 y 913. En caso de que se trate de un menor que no hubiese cumplido la edad requerida para tal emancipación, aún existe la Ley de Protección de Menores, Ley Núm. 75 del 28 de mayo de 1980, 8 L.P.R.A. 401 *et seq.,* derogada y suplantada recientemente por la Ley Núm. 342 de 16 de diciembre de 1999 mediante la

resolución fuese remitida al Registro Demográfico. 32 L.P.R.A. sec. 2695. El adoptado entonces pasará a llevar el apellido de los adoptantes. 31 L.P.R.A. sec. 535.

cual el Estado, a través del Departamento de la Familia, interviene para proteger a los menores víctimas de maltrato o negligencia por parte de sus padres. Dicha Ley le otorga facultad al Departamento de la Familia para identificar, investigar e intervenir en estos casos, pudiendo llegar incluso a la remoción del hogar adoptivo y a solicitar la privación, restricción y hasta suspensión de custodia y de patria potestad.

Por último, todo menor que resulte maltratado o que haya sido abusado sexualmente por el adoptante, podrá llevar contra éste las acciones criminales correspondientes.

Hemos visto entonces, que una hija adoptada como la de autos no se encuentra desprotegida de manera tal que se justifique el trastrocar la permanencia y seguridad que brinda nuestra legislación a la filiación adoptiva, mediante un remedio de impugnación de adopción que a fin de cuentas no tiene fin justificado.

## IV

Por los fundamentos antes expuestos confirmaríamos la Sentencia emitida por el Tribunal de Circuito de Apelaciones objeto de este recurso y disentimos de la Sentencia emitida por este Tribunal.


BALTASAR CORRADA DEL RIO
JUEZ ASOCIADO