ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| JUAN EDGARDO PABÓN LÓPEZ<br>Apelante<br><br>v.<br><br>WANDA IVELISSE AGOSTO DELGADO Y OTROS<br>Apelado | KLAN202500539 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Número: HU2024RF00493<br><br>Sobre: Filiación-Reconocimiento e impugnación filiatoria (Acción mixta) |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de julio de 2025.

Comparece ante nos el señor Juan Edgardo Pabón López (apelante o señor Pabón López) y solicita la revocación de la *Sentencia* notificada el 9 de abril de 2025, por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI o foro primario). En esta el TPI desestimó la acción sobre filiación instada, con perjuicio.

Por los fundamentos que exponemos a continuación, revocamos el dictamen apelado.

**I.**

El señor Pabón López incoó la demanda de epígrafe contra los integrantes de la Sucesión del señor Gregorio Agosto López (Sucesión), quien falleció intestado el 4 de junio de 2023. La Sucesión está compuesta por Wanda Ivelisse Agosto Delgado; Annette Vanesa Agosto Delgado; Marisol Agosto Delgado; Vilmary Vanessa Agosto Delgado; Edwin Oscar Agosto Delgado y, Vilma Jannette Agosto Delgado (apelados).

En esencia, el apelante suplicó al foro primario que dictara sentencia en la cual se le reconociera y declarara la filiación del señor Pabón López como hijo del difunto, Gregorio Agosto López (señor Agosto López). Adujo que, nació el 13 de agosto de 1968, y a pesar de que surge en su certificado de nacimiento, debidamente inscrito en el Registro Demográfico, que su padre es el señor Juan Pabón, lo cierto es que, su verdadero padre es Gregorio Agosto López. Unido a su petitorio incluyó dos declaraciones juradas. La primera fue suscrita por el señor Edwin Oscar Agosto Delgado, en la cual atestó que, Gregorio Agosto López, le manifestó en el 1987 que tenía otro hermano, refiriéndose al apelante. Igual información surge de la declaración jurada de la señora Vilma Jannette Agosto Delgado.

Sostuvo que, una certificación emitida el 9 de noviembre de 2023 por el DNA Diagnostic Center refleja que, el apelante y el señor Edwin Oscar Agosto Delgado tienen un índice consanguíneo de 96.505%, confirmando así, la consanguinidad de hermanos e hijos del causante, Gregorio Agosto López. Además, el apelante presentó fotos que demuestran sus recuerdos familiares con los apelados y el causante.

En referencia a una presunta herencia, expuso que, moral y legalmente sus hermanos debieron reconocerlo como hermano e incluirlo en el caudal relicto por su fenecido padre. Ante ello, acudió ante el foro primario, conforme autoriza el Artículo 561 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7111, para establecer legalmente su filiación al señor Gregorio Agosto López.

En reacción, tanto el señor Edwin Oscar Agosto Delgado, como la señora Vilma Jannette Agosto Delgado, acreditaron su contestación en la que aceptaron las alegaciones de la demanda. Sin embargo, los demás integrantes de la sucesión, Annette, Wanda, Marisol y Vilmary Vanessa, todas de apellido Agosto Delgado,

instaron una *Moción de desestimación*, el 25 de noviembre de 2024. En esta, plantearon que el foro judicial no ostenta jurisdicción para dilucidar la causa ya caducada.

Como fundamento plantearon que, el apelante advino en conocimiento de la posible inexactitud en su filiación desde el 2010, siendo mayor de edad. Añadieron que, el señor Juan Pabón, como padre del apelante, así como sus herederos, deberían formar parte de la presente reclamación, que tiene el efecto de impugnar la filiación ya reconocida por virtud del certificado de nacimiento del apelante. Argumentaron que, a pesar de conocer la posible filiación con el causante, Gregorio Agosto López, desde al menos el 2010, el apelante esperó que éste falleciera para formar parte de la herencia. Lo antes, mediante la presentación de la demanda de epígrafe, incoada el 24 de septiembre de 2024, fuera del término permitido para instar la acción filiatoria. Además, argumentaron que, en ausencia de la acumulación del señor Juan Pabón y sus herederos, el TPI no tenía jurisdicción para entender sobre la causa instada, por falta de parte indispensable.

En respuesta a lo antes y en atención al planteamiento sobre la presunta falta de parte indispensable, el apelante anunció que enmendaría la demanda para incluir al señor Juan Pabón y sus herederos. Sin embargo, se opuso a los demás fundamentos expuestos en el referido petitorio dispositivo. Ello, por entender que, surge del Testamento Abierto otorgado por el causante lo siguiente:

> Manifiesta "El Testador" que si se probare que tuvo algún otro hijo no reconocido, y este resultara filiado posterior a su muerte, e instituido como su heredero forzoso, es su expresa voluntad que reciba estrictamente la participación que por Ley corresponda del tercio de legítima estricta, ex[c]luyéndolo de recibir nada más". Véase Anejo 3, párrafo segundo de inciso segundo de Testamento Abierto Gregorio Agosto López.

> [...] probar su lazo consanguíneo con el causante Gregorio Agosto López, dentro de los dos años que permite el Código Civil que se haga.[1]

---

[1] Apéndice, pág. 35.

Arguyó que, mediante la citada cláusula testamentaria, el causante reconoció la posibilidad que tuviera un hijo no reconocido y, de probarse luego de su muerte, se otorgaría su participación en la legítima estricta del caudal. Argumentó que, el 4 de junio de 2023, es la fecha del fallecimiento y el 28 de octubre de 2023 es la fecha de la confirmación del lazo consanguíneo. Tomando lo antes en consideración, sostuvo que, al iniciar la acción filiatoria el 24 de septiembre de 2024, la realizó dentro de los dos años desde la muerte de su padre biológico, conforme establece el Artículo 561 del Código Civil de Puerto Rico de 2020, *supra.*

Evaluado lo antes, el 20 de diciembre de 2024, mediante notificación en autos, el TPI declaró no ha lugar la solicitud de desestimación y ordenó al apelante a enmendar la demanda para acumular la parte indispensable.[2] En cumplimiento, el apelante presentó una demanda enmendada, el 22 de diciembre de 2024, para incluir al señor Juan Pabón y a la Sucesión de Juan Pabón compuestos por personas naturales X, Y, Z como partes indispensables.[3] Asimismo instó una *Moción en solicitud emplazamiento por edicto.* No obstante, lo anterior, el TPI dispuso que: "Una vez el Tribunal adjudique la controversia sobre la alegada caducidad de la causa de acción, se atenderá el remedio que se solicita". A esos efectos, la expedición del emplazamiento por edicto quedó pendiente ante el TPI.[4]

Coetáneo a lo antes, los apelados solicitaron reconsideración sobre la denegatoria a su solicitud de desestimación. Centraron su argumento sobre el periodo de dos años de caducidad que inicia desde el conocimiento de la posible filiación, en el año 2010, cuando el apelante fue presentado a ellas como hijo del señor Agosto López.

---

[2] Entrada 25 en SUMAC.
[3] Entrada 26 en SUMAC.
[4] Entrada 31 en SUMAC.

Es de notar que, de su escrito, no se desprende referencia al Artículo 561 citado por el apelante en el que se establece lo siguiente:

> "Artículo 561. — Legitimados y plazos para presentar la acción. (31 L.P.R.A. § 7111) Toda persona puede pedir que se declare judicialmente su estado de hijo de cualquiera de sus progenitores durante la vida de estos. Muerto el progenitor, la acción debe incoarse contra sus herederos, dentro del plazo de dos (2) años, contados a partir de su muerte, salvo en los casos siguientes: (a) si el progenitor muere durante la minoridad o la incapacidad absoluta del hijo, este puede presentar la acción dentro del plazo de los cuatro (4) años siguientes a la fecha en la que alcance la mayoría de edad o en la que termine su estado de tutela; o (b) si después de la muerte del progenitor aparece algún documento u otras pruebas materiales en las que se reconozca expresamente al hijo, este puede presentar la acción dentro del año siguiente del hallazgo o del conocimiento de dichas pruebas."[5]

Sin propiamente atender la demanda enmendada y adjudicar la solicitud de emplazamiento por edicto, el TPI señaló y celebró una vista, el 20 de febrero de 2025, pendiente la referida solicitud de reconsideración instada por las apeladas. Durante la vista se admitió prueba testifical y documental.[6] Justipreciada la evidencia admitida y los memorandos de derecho, el TPI consignó las siguientes determinaciones de hechos:

> 1. El demandante nació en San Juan, Puerto Rico, el 13 de agosto de 1968. Actualmente tiene cincuenta y siete (57) años.
> 2. Su padre y madre registral, según se desprende del Certificado de Nacimiento expedido por el Registro Demográfico, lo son Juan Pabón y Carmen López.
> 3. El demandante afirma que, a pesar de la información que surge de su Certificado de Nacimiento, su padre biológico es el señor Gregorio Agosto.
> 4. El demandante testificó que mantuvo una relación de padre e hijo con el señor Gregorio Agosto durante el curso de prácticamente toda su vida; que éste lo visitaba en su hogar todos los sábados.
> 5. El demandante no conoce personalmente al señor Juan Pabón, su padre registral.
> 6. El demandante manifestó tener otros hermanos por parte del señor Gregorio Agosto. Este identificó a la señora Annette Agosto, a la señora Marisol Agosto, a la señora Wanda Agosto, a la señora Vilmary Agosto, a la señora Vilma Agosto y al señor Edwin Agosto como sus hermanos paternos.

---

[5] Apéndice, pág. 61.

[6] Apéndice, pág. 89. La parte demandante compareció representada por el licenciado José R. Maldonado Velázquez. Además, compareció la licenciada Keila M. Ortega Casals, en representación de los demandados, pero éstos no estuvieron presentes. No obstante, comparecieron los testigos, la señora Vilma J. Agosto Delgado y el señor Edwin Oscar Agosto Delgado. Estando la representación legal de la parte demandada de acuerdo con que se llevara a cabo la Vista Evidenciaria, el Tribunal admitió la siguiente prueba documental de la Parte Demandante:
- Exhibit 1: Certificado de Defunción del señor Gregorio Agosto.
- Exhibit 2: Declaración Jurada de la señora Vilma Agosto.
- Exhibit 3: Declaración Jurada del señor Edwin Agosto.

7. La señora Vilma Maldonado testificó que reside en Naguabo y que el señor Gregorio Agosto era su padre.

8. El demandante conoció al señor Edwin Agosto en el año 1987, cuando tenía treinta y ocho (38) años. A la señora Vilma Agosto, la conoció en un concesionario de carros en el año 2010. Fue el señor Gregorio Agosto quien los presentó en ambas instancias como sus hermanos.

9. El demandante aseguró que a partir de entonces tiene una relación de hermanos con el señor Edwin Agosto y con la señora Vilma Agosto. Además, testificó que ha compartido también con quienes identifica como sus otros hermanos paternos en los cumpleaños, Navidades, el Día de los Padres, entre otras fechas festivas.

10. El señor Gregorio Agosto falleció el 4 de junio de 2023 en Humacao, Puerto Rico, cuando tenía 83 años. El demandante estuvo presente en su funeral el 8 de junio de 2023.

11. El señor Gregorio Agosto tenía problemas de oxigenación, diabetes, presión alta y problemas en la columna vertebral que no le permitían caminar. Al momento de fallecer, estaba encamado.

12. La señora Vilma Maldonado testificó que el señor Gregorio Agosto fue cuidado en sus últimos momentos por amas de llaves y, en ocasiones, por su esposo y sus hermanas, la señora Wanda Agosto y la señora Marisol Agosto.

13. El demandante relató que tuvo acceso al testamento de su padre a través del señor Edwin Agosto, quien le entregó una copia en septiembre de 2023.

14. La señora Vilma Maldonado afirmó que supo del testamento posterior a la muerte del señor Gregorio Agosto y que entiende que el testamento no ha sido impugnado.

15. La señora Vilma Maldonado atestiguó haber leído el testamento y que contiene una cláusula en el que su padre expresamente menciona a sus seis hijos en su matrimonio con la señora Edna Luz Delgado Roque. Además, que en dicho Testamento el señor Gregorio Agosto nombra a los cinco hermanos como herederos y deshereda a su hermano, el señor Edwin Oscar Agosto.

16. La señora Vilma Maldonado también testificó que el Testamento tiene una cláusula adicional abierta que establece que si se probara que el señor Gregorio Agosto tuvo algún otro hijo no reconocido y si éste resultara filiado después de su muerte, la voluntad de su padre es que reciba estrictamente la participación que por Ley le corresponda, excluyéndolo de recibir nada más.

17. El demandante manifestó que luego de tener acceso al Testamento del señor Gregorio Agosto acudió a un laboratorio con el señor Edwin Agosto, en octubre de 2023 para realizarse una prueba de ADN. El demandante aseveró que los resultados se recibieron a principio de noviembre y que la prueba arrojó 96.5% de consanguineidad. No se presentó el resultado de esta prueba para la Vista Evidenciaria, aunque obra en el expediente del caso.

18. El demandante reconoció que, antes de tener conocimiento del Testamento, no llevó a cabo ningún proceso para impugnar la paternidad del señor Juan Pabón. Tampoco, el señor Gregorio Agosto presentó remedio alguno con ese propósito.

19. En todos los años en que alega el demandante que compartió con el señor Gregorio Agosto, jamás le hizo acercamiento alguno para realizarse una prueba de histocompatibilidad.

20. La demanda en el presente caso se radicó el 24 de septiembre de 2024.

21. El demandante expresó que tiene dos hijas y que estas reconocían al señor Gregorio Agosto como su abuelo.

22. El demandante sostuvo que desde que tiene uso de razón se refería al señor Agosto como su padre.[7]

Basado en lo antes, el TPI determinó que la acción filiatoria caducó y fundamentó su análisis únicamente sobre el término aplicable a una acción filiatoria de un hijo contra su presunto padre. En su consecuencia ordenó la desestimación de la demanda instada, con perjuicio.

Insatisfecho, el apelante solicitó reconsideración la cual fue denegada, por lo que, aun inconforme, acude ante esta Curia y señala lo siguiente:

> Erró el Tribunal de Primera Instancia al desestimar la demanda por caducidad, al aplicar el término de caducidad de un (1) año del Artículo 575 del Código Civil de 2020 (31 LPRA Sec 7129), cuando, por disposición expresa en el testamento abierto del causante Gregorio Agosto López se debía respetar participación en la legítima estricta a cualquier hijo no reconocido que lo demostrara luego de su fallecimiento, por lo que la ley aplicable es la ley de herencia.

En cumplimiento con nuestra *Resolución,* emitida el 16 de junio de 2025, comparece la parte apelada mediante *Moción de desestimación y/o Alegato en Oposición a Recurso de Apelación,* presentada el 14 de julio de 2025. En esencia, los apelados sostienen que no procede revertir el dictamen desestimatorio, toda vez que, se probó que el apelante advino en conocimiento de la posible inexactitud en su filiación desde hace más de treinta (30) años, por lo que la acción filiatoria caducó.

## II.

### A. Filiación

Nuestra jurisprudencia ha definido la filiación como "el estado civil de la persona determinado por la situación que, dentro de una familia, le asigna el haber sido engendrada en ella o el estar en ella en virtud de la adopción o de otro hecho legalmente suficiente al efecto". *Álvareztorre Muñiz* v. *Sorani Jiménez,* 175 DPR 398, 410

---

[7] Apéndice, págs. 89-91.

(2009).[8] También, se ha definido como el "vínculo biológico y jurídico que une a una persona con el hombre que la engendró y con la mujer que la alumbró". R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, 1ra ed., San Juan, Programa de Educación Jurídica Continua Universidad Interamericana de Puerto Rico Facultad de Derecho, 2002, Vol. II, pág. 886. Sin embargo, este lazo biológico no siempre coincide con la realidad jurídica. *Sánchez v. Sánchez*, 154 DPR 645, 661 (2001). Dado el hecho de que la filiación tiene lugar por naturaleza, nuestro ordenamiento civil se ha encargado de recoger esta realidad biológica y regularla con el fin de distribuir los derechos y obligaciones entre padres e hijos. *Íd.*, pág. 662.

En lo pertinente a la controversia, es preciso resaltar lo resuelto por el Tribunal Supremo de Puerto Rico en *Sánchez v Sánchez*, supra. El Alto Foro dispuso que, nuestro ordenamiento jurídico admite que, en vista de que la reclamación de la verdadera filiación conlleva necesariamente la impugnación de la paternidad del esposo de la madre o de la legítima paternidad reconocida, su efecto inescapable es la destrucción de un *status* de la referida legitimidad filial reconocida. Ello porque el demandante, como promovente de la acción, no podría tener dos padres. Siendo así, la impugnación de la presunta paternidad resulta ser una acción subsidiaria de la acción filiatoria.

En *Sánchez,* el Alto Foro atendió hechos similares a los representados en la demanda de epígrafe. En esa ocasión, el promovente de la demanda instó la acción de filiación después de la muerte de su presunto padre. Adujo que, aun cuando el causante siempre lo trató como su hijo y que dicha información era de conocimiento general para las personas cercanas, nunca lo reconoció oficialmente como hijo. Expuso que, fue el compañero

---

[8] Citando a *Castro v. Negrón,* 159 DPR 568, 579-580 (2003).

consensual de su madre, quien lo reconoció como hijo, inscribiéndolo con su apellido, en el Registro Demográfico. Como parte de sus alegaciones indicó que, el causante había otorgado testamento abierto y suplicó que el foro judicial dictara sentencia en la cual se reconociera su filiación y sus derechos, por razón de preterición de heredero forzoso, entre otros.

Al dirimir las controversias sobre caducidad y ausencia de partes indispensables, el Alto Foro dispuso sobre la acción mixta, la cual trata de una acción de filiación principal, en la cual, la de impugnación de paternidad, resulta ser de índole accesoria. Concluyó en específico que, no se sostiene que existan dos plazos distintos para el ejercicio de cada una por lo que explicó que el plazo resulta ser "a saber, toda la vida del presunto padre (...) e incluso hasta un año después de la muerte del presunto padre."

De otra parte, el Alto Foro atendió los señalamientos sobre partes indispensables. En su análisis reconoció la acción filiatoria principal contra los herederos del presunto padre ya fallecido en distinción de una acción filiatoria contra el padre mientras viva. Consignó que los intereses de los descendientes entrarán en juego sólo a la muerte del demandante. Lo antes, también hace necesario la inclusión del padre legítimo y sus propios herederos, en la acción accesoria (sobre impugnación de paternidad), toda vez que, sus derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia sobre esta materia. En *Sánchez* se citó el Artículo 126 del Código Civil de 1930 que hoy corresponde al Artículo 561 del Código Civil de 2020, *supra,* el cual establece lo siguiente:

**Legitimados y plazos para presentar la acción**

Toda persona puede pedir que se declare judicialmente su estado de hijo de cualquiera de sus progenitores durante la vida de estos. Muerto el progenitor, la acción debe incoarse contra sus herederos, dentro del plazo de dos (2) años, contados a partir de su muerte, salvo en los casos siguientes:

(a) Si el progenitor muere durante la minoridad o la incapacidad absoluta del hijo, este puede presentar la acción dentro del plazo de los cuatro (4) años siguientes a la fecha en la que alcance la mayoría de edad o en la que termine su estado de tutela: o

(b) si después de la muerte del progenitor aparece algún documento u otras pruebas materiales en las que se reconozca expresamente al hijo, este puede presentar la acción dentro del año siguiente del hallazgo o del conocimiento de dichas pruebas. -Junio 1, 2020, Núm. 55, art. 561, ef. 180 días después de Junio 1, 2020.

De otra parte, debemos señalar que, el Artículo 562 del Código Civil, 31 LPRA sec. 7112 establece:

**Caducidad de la acción filiatoria**

Transcurridos los plazos dispuestos en la sec. 7111 de este título, la acción filiatoria caduca. -Junio1, 2020, Núm. 55, art. 562, ef. 180 días después de Junio 1, 2020.

Por otro lado, el Artículo 575 del Código Civil, 31 LPRA sec. 7129, dispone el plazo de caducidad para impugnar la paternidad. En particular, caduca al año desde que el impugnador tiene indicios o conoce hechos que crean una duda verdadera sobre la inexactitud de la filiación. *Íd.* Ahora bien, en cuanto a la acción accesoria, el Artículo 576 del Código Civil, 31 LPRA sec. 7130, establece el plazo extendido para el hijo que impugne la paternidad o la maternidad mediante una acción judicial. Específicamente, este artículo dispone lo siguiente:

El hijo puede impugnar la paternidad o la maternidad durante toda la vida del progenitor presunto o hasta un (1) año después de su muerte, en cuyo caso debe dirigir la acción contra los herederos.

Si el progenitor presunto muere durante la minoridad o el estado de incapacidad del hijo, el plazo de un (1) año comienza a transcurrir desde que este llegue a la mayoridad o cese la tutela.

Como vemos, para ejercitar las acciones reguladas por los mencionados artículos, nuestro ordenamiento provee estos términos de caducidad tanto para la acción de filiación, así como la acción de impugnación de paternidad o maternidad. Se observa además que, el legislador estableció dos términos correspondientes a plazos de caducidad, a saber: una durante la vida del presunto progenitor y

otra después de su muerte, en cuyo caso se insta la acción contra los herederos.

Sobre el particular, el Tribunal Supremo de Puerto Rico ha explicado que la caducidad es "la decadencia de un derecho, o su pérdida, por no haber cumplido la formalidad o condición exigida por ley en un plazo determinado. Esta pérdida del derecho se produce automáticamente por no ejercitarse en el transcurso de dicho plazo". *Álvareztorre Muñiz v. Sorani Jiménez,* supra, pág. 416.[9] Nuestro más Alto Foro ha destacado que la caducidad siempre extingue el derecho a la causa de acción con el mero transcurso del tiempo; la finalidad es fijar de antemano el tiempo durante el cual puede ejercitarse el derecho. *Martínez Soria v. Proc. Esp. Rel. Fam.,* 151 DPR 41, 57 (2000). Mediante los términos de caducidad se busca evitar que perdure la incertidumbre en determinada relación o situación jurídica. *González Rosado v. Echevarría Muñiz,* 169 DPR 554, 567 (2006). Contrario a un término prescriptivo, uno de caducidad no puede ser interrumpido o suspendido, por lo que el mismo siempre extingue el derecho a la causa de acción con el mero transcurso del tiempo. *Muñoz v. Ten General,* 167 DPR 297, 302 (2006).

### B. Parte Indispensable

La Regla 16.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, establece quiénes son parte indispensable, a saber: "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia [...]" *Inmobiliaria Baleares, LLC y otros v. Benabe González y otros,* 2024 TSPR 112, resuelto el 21 de octubre de 2024. Entiéndase que, es indispensable aquella parte a quien se le violentaría su debido proceso de ley si se adjudica la

---

[9] Nota al calce, citando a R. Ortega-Vélez, *Compendio de Derecho de Familia,* San Juan, Pubs JTS, 2000, T.I., Cap. VII, pág. 393.

controversia sin su presencia. *Pérez Ríos et al. v. CPE,* 213 DPR 203 (2023); *Rivera Marrero v. Santiago Martínez,* 203 DPR 462 (2019).

Como se sabe, el propósito de la Regla 16.1, *supra,* es proteger a las personas, naturales o jurídicas, que no formen parte de un pleito, de los efectos que acarrea la sentencia dictada. *Pérez Ríos et al. v. CPE,* supra. Al mismo tiempo, evita la multiplicidad de pleitos. *Íd.*[10] Sobre el particular, nuestro más Alto Foro ha resuelto que, la falta de parte indispensable constituye una defensa irrenunciable, susceptible de invocarse en cualquier etapa de los procedimientos. *Inmobiliaria Baleares, LLC y otros v. Benabe González y otros,* supra. Lo anterior, debido a que, el efecto de no traer a una parte indispensable redunda en una violación a su debido proceso de ley. *Íd.* Por tanto, la ausencia de parte indispensable es un fundamento para dejar sin efecto una sentencia por nulidad. *Íd.* Ello, con el efecto de dejar sin jurisdicción al tribunal para resolver la controversia en ausencia de una parte indispensable. *Pérez Ríos et al. v. CPE,* supra.

### III.

En su único señalamiento de error, el apelante cuestiona el dictamen desestimatorio de la acción de filiación instada. Ello, por entender que, el TPI incidió al aplicar el término de caducidad de un año, dispuesto en el Artículo 575 del Código Civil de 2020, *supra.* Añade a su argumento que, el testamento abierto del causante expresamente consigna la voluntad de Gregorio Agosto López sobre la participación en la legítima estricta a cualquier hijo no reconocido que lo demostrara luego de su fallecimiento. A lo antes, se oponen las apeladas y sostienen que el foro primario actuó correctamente al desestimar con perjuicio la acción sobre filiación incoada contra los herederos del causante, Gregorio Agosto López.

---

[10] Véase, además, *FCPR v. ELA et al.,* 211 DPR 521 (2023).

Hemos evaluado concienzudamente el recurso ante nos, con particular atención al cuadro fáctico procesal, que necesariamente incide sobre los asuntos primordiales concernientes a la jurisdicción del foro judicial, en esta etapa de los procedimientos.

Al entender sobre la presente causa se hace evidente que, nos encontramos ante lo que nuestro ordenamiento reconoce como una acción mixta. Ello, en la medida que, el promovente de la acción, mayor de edad, pretende la declaración de determinada filiación (con el causante, señor Gregorio Agosto López) mientras que, al mismo tiempo, inescapablemente, propone la impugnación de paternidad reconocida del señor Juan Pabón quien, junto a sus herederos, resultan ser partes indispensables en la presente causa. Lo antes, fue promovido y argumentado por las propias apeladas mediante una moción dispositiva, la cual fue acogida en parte por el foro primario. Del expediente surge que, en un principio, el TPI acertadamente denegó la solicitud de desestimación y correctamente concluyó que, al tratarse de una acción mixta, el presunto padre legítimo, Juan Pabón y sus herederos, resultaban ser partes indispensables en la demanda instada.

En cumplimiento, el apelante inmediatamente presentó la demanda enmendada y solicitó la expedición de un emplazamiento por edicto. Inexplicablemente, el foro primario optó por dejar pendiente la acumulación indispensable del señor Juan Pabón y sus herederos, quienes tienen un interés común en la acción principal filiatoria, la cual tiene el efecto de impugnar indudablemente la paternidad legítima, según lo publicado en el certificado de nacimiento del apelante. Dicho proceder -al no acumular una parte ya reconocida como indispensable- tuvo la consecuencia de privar de jurisdicción al foro primario de continuar los procesos ante su consideración. Corresponde que el TPI conceda la oportunidad de

acumular las partes que fueron originalmente omitidas.   En su consecuencia, el pronunciamiento apelado resulta inoficioso.

Por último y con relación a los términos prescriptivos correspondientes a la causa instada contra los herederos del señor Gregorio Agosto López, tomamos conocimiento de que, una vez el foro primario esté en posición, con el beneficio de las posturas de todas las partes debidamente acumuladas, podrá auscultar su jurisdicción, conforme a la normativa antes expuesta, la cual corresponde a una causa de naturaleza mixta, presentada después de la muerte del señor Gregorio Agosto López contra sus herederos. Lo antes, no prejuzga ninguna determinación del foro primario y acción ulterior, si alguna, de cualquiera de las partes.

**IV.**

Por todo lo anterior, revocamos el dictamen apelado y devolvemos el caso para la continuación de los procesos, conforme lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones